MINNIE L. PAYNE, joined by her husband, J. WALLACE PAYNE, v. CITY OF CLEARWATER, Pinellas County, Florida.

19 So. (2nd) 406                                        June Term, 1944
October 13, 1944                                        Division A

*C. V. McClurg,* and *Carver & Langston,* for appellants.
*Ralph Richards,* for appellee.

PER CURIAM:

This appeal is from a final judgment on demurrer in behalf of the defendant below (appellee here) entered in the

Circuit Court of Pinellas County, Florida. Pertinent and material portions of plaintiff's amended declaration are viz:

". . . That on July 7, 1942, and for a long period of time immediately prior thereto, the defendant maintained for the use of the general public a spring board, the middle and one end of which was securely attached to a portion of the said municipal pier, and the other end of which extended from the said municipal pier over the edge of the municipal pier and for some few feet on beyond the edge of the municipal pier over the water of the said tributaries of the Gulf of Mexico; that the said Clearwater Beach at and in the immediate vicinity of the said pier on July 7, 1942, and for many months immediately prior thereto was used as a bathing beach; that on July 7, 1942 and for many months immediately prior thereto, the said spring board and the said municipal pier were open to the public by the defendant for the purpose among others of swimming, bathing and diving; that the defendant held out the same on July 7, 1942 and for a long period of time immediately prior thereto as a suitable place for bathing, swimming and diving; and that on July 7, 1942, and for many months immediately prior thereto large numbers of people used the said spring board which was then and there open to the public for diving purposes.

"This plaintiff further says that by reason of the premises, it became and was the duty of the defendant to maintain the said springboard located as aforesaid in a good and safe repair and condition for the use of the public who were then and there with the knowledge of the defendant using the same. This plaintiff further says that altho it was the duty of the defendant to maintain the said springboard in a good and safe condition for the use of the public who were then and there using the same as aforesaid, none the less the said defendant not regarding its duty in that behalf, to-wit: On July 7, 1942, wrongfully, negligently and carelessly allowed and suffered the said springboard while the same was being used by the general public as aforesaid to become and remain in a bad and dangerous state of repair and condition at the date aforesaid, which said condition had existed and continued for several weeks immediately prior thereto, and that

the said bad and dangerous state of repair and condition of the spring board was known to the defendant or by the exercise of reasonable care and diligence should have been known to the defendant.

"This plaintiff further says that notwithstanding the defendant's duty to maintain the said springboard while it was being used by the general public as aforesaid in a safe repair and condition, the said defendant wrongfully, carelessly and negligently failed to maintain the said springboard while it was being used by the public for diving purposes as aforesaid in a safe repair and condition in that the covering of the said springboard would become wet while being used for diving purposes, and which springboard was covered partially by canvass and partially by a material the exact nature of which is to the plaintiff unknown, would become when wet extremely slippery to the extent that the said springboard with its covering was dangerous and unsafe for use as a springboard for diving purposes.

"That on to-wit: July 7, 1942 and at a time while the general public was using the said springboard and at a time while the said springboard and its covering were wet and dangerously slippery, this plaintiff who was not then and there aware of the dangerous slippery condition of the said spring board and who had not theretofore used the same for diving purposes undertook to go upon the said springboard and to dive therefrom, but this plaintiff further says that while so doing, she by reason of the unsafe and dangerous condition of the said springboard and its covering, which said springboard was then and there maintained by the defendant for the use of the public and at a time when this plaintiff was unaware of its dangerous and unsafe condition, slipped and fell, by means of which the plaintiff suffered great pain and serious, painful and permanent injuries. . . ."

The grounds of the demurrer are: (1) the amended declaration fails to state a cause of action; (2) the allegation in the amended declaration 'to become and remain in a bad and dangerous condition," is but a conclusion of the pleader; (3) the amended declaration defines the defective condition of the springboard thusly: "springboard would become wet

while being used for diving purposes" and "become when wet extremely slippery to the extent that the said springboard with its covering was dangerous and unsafe for use as a springboard for diving purposes;" (4) the amended declaration fails to allege any defects in the springboard other than were known to the defendant or should have been known.

The case of Turlington v. Tampa Electric Co., 62 Fla. 398, 56 So. 696, 38 L.R.A. (N.S.) 72, Ann. Cas. 1913D, 1213, involved the sufficiency of a declaration for injuries sustained when diving from a springboard into the waters of Hillsborough Bay. Places of amusement were maintained by the defendant, one of which was for bathing, swimming and diving. The diving was from a springboard about ten feet long, and about three or four feet above the water at average mean tide. The average depth of the water underneath the springboard at mean tide was around two and one-half feet. We held that from the alleged facts that the place for diving and bathing was dangerous.

In reversing the judgment and sustaining the declaration we, in part, said, (text 62 Fla. 405-6) :

"Where a party maintains a bath house, or a diving or swimming place for the use of the public for hire, and negligently permits any portion of the same or its appurtenances whether in the house or of the depth of the water or in the condition of the bottom or in things thereon to be in an unsafe condition for its use in the manner in which it is apparently designed to be used, a duty imposed by law is thereby violated; and if an injury to another proximately results from a proper use of the same without contributory negligence, a recovery of compensatory damages may be had. . . ."

See McKinnye v. Adams, 68 Fla. 208, 66 So. 988, L.R.A. 1915D 422. Ann. Cas. 1917B 326; Ide v. City of St. Cloud, 150 Fla. 806, 8 So. (2nd) 924.

In the case at bar it is alleged that the springboard was unsafe or dangerous only when wet. We infer from the amended declaration that water would splash on the springboard when the diver struck the water. Plaintiff knew that the springboard was wet or likely would be wet by splashing

water because of the usual and normal operation of the springboard. The risk of using the springboard was obvious, clear and foreseen by the use of ordinary care and judgment. The slippery condition of the springboard was incidental to its use and we cannot say that defendant was negligent under the condition and circumstances set out in the amended declaration.

The rule appears to be that one who participates in the diversion afforded by an amusement device accepts the dangers that inhere in it so far as they are obvious and necessary. The same is true of one who participates in other sports or pastimes, just as a fencer accepts the risk of a thrust by his antagonist or a spectator at a ball game the chance of contact with the ball. See Shearman and Redfield on Negligence Vol. 4 (Rev. Ed.) 1566, par. 647.

The duty of an owner or operator of a public amusement place is clearly defined in the work *supra,* at page 1562, par. 644, viz:

"The owner or operator of a public place of amusement or entertainment is not the insurer of the safety of his patrons, but owes to them only the duty of reasonable care. He is bound to exercise only the degree of care that would be expected of an ordinarily careful and prudent person in his position, and his duty is fulfilled when he makes the place as little dangerous as such a place can reasonably be made, having regard to the contrivances necessarily used in conducting such a place."

The judgment is affirmed.

BUFORD, C. J., CHAPMAN, TERRELL and ADAMS, JJ., concur.