493 So.2d 1002 (1986)
Gloria Jean AVALLONE, Petitioner,
v.
BOARD OF COUNTY COMMISSIONERS OF CITRUS COUNTY, et al., Respondents.
No. 67074.
Supreme Court of Florida.
July 10, 1986.
Rehearing Denied September 26, 1986.
*1003 Arnold R. Ginsberg of Horton, Perse & Ginsberg and Nance, Cacciatore & Sisserson, Miami, for petitioner.
Daniel A. Amat of Pattillo & McKeever, Ocala, for respondents.
PER CURIAM.
We review Avallone v. Board of County Commissioners, 467 So.2d 826 (Fla. 5th DCA 1985), because of direct and express conflict with Ingraham v. Dade County School Board, 450 So.2d 847 (Fla. 1984). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
Petitioner sued respondent for negligence in operating a county-owned park and swimming facility. The trial court ruled that the county could be sued because its purchase of liability insurance under section 286.28, Florida Statutes (1983), constituted a waiver of sovereign immunity to the extent of coverage. However, the trial court granted summary judgment in favor of respondent on the grounds there were no genuine issues of material fact that the actions of another swimmer constituted an intervening cause of petitioner's injuries. On petition for rehearing, the district court held that section 286.28 did not grant a waiver of sovereign immunity for planning level activities. In the court's view, the immunity for planning level activities is absolute and political subdivisions may assert immunity even though they have purchased liability insurance which covers the alleged tort. For the reasons which follow, we disagree and hold that political subdivisions may not claim absolute immunity contrary to the provisions of section 286.28.
In Ingraham, we addressed the impact of section 768.28, Florida Statutes (1981), on section 286.28, formerly section 455.06, Florida Statutes (1977). We concluded that section 286.28 remained in effect and became a part of the overall waiver of sovereign immunity.
Section 768.28 totally revised the area of sovereign immunity, but as a part of the overall revision of this area by the legislature it specifically provided that the statutory provisions permitting the state to purchase insurance based upon section 455.06 would continue in effect. Specifically, section 768.28(1) provides: "Laws allowing the state or its agencies or subdivisions to buy insurance are still in force and effect and are not restricted in any way by the terms of this act." Section 455.06 thus became a part of the overall scheme of the legislature relating to the waiver of sovereign immunity.
Ingraham, 450 So.2d at 849.
Section 286.28 authorizes political subdivisions who, inter alia, "own or lease buildings or properties or perform operations in the state or elsewhere ... to secure and provide ... insurance to cover liability for damages on account of bodily or personal *1004 injury or death resulting therefrom to any person ... arising from or in connection with the ... operation of any such buildings, property ... or any other such operations." Section 286.28(1). Section (2) goes on to provide:
(2) In consideration of the premium at which such insurance may be written, it shall be a part of any insurance contract providing said coverage that the insurer shall not be entitled to the benefit of the defense of governmental immunity of any such political subdivisions of the state in any suit instituted against any such political subdivision as herein provided, or in any suit brought against the insurer to enforce collection under such an insurance contract; and that the immunity of said political subdivision against any liability described in subsection (1) as to which such insurance coverage has been provided, and suit in connection therewith, are waived to the extent and only to the extent of such insurance coverage; provided, however, no attempt shall be made in the trial of any action against a political subdivision to suggest the existence of any insurance which covers the whole or in part any judgment or award which may be rendered in favor of the plaintiff, and if a verdict rendered by the jury exceeds the limit of the application insurance, the court shall reduce the amount of said judgment or award to a sum equal to the applicable limit set forth in the policy.
The thrust of section 286.28 is relatively simple. Political subdivisions are authorized to spend public money for the purchase of liability insurance. However, if such insurance is purchased and is within the purview of the statute, the contract shall prohibit the assertion of sovereign immunity to the extent of the coverage, even if it is otherwise a valid defense. To construe the section otherwise would deprive the public of the benefit of the public expenditure.
The above reading of section 286.28 reflects the legislative intent. The district court concluded that this reading was inconsistent with the later enactment of section 768.28, waiving sovereign immunity for the state, its agencies, and political subdivisions for torts committed by their employees within the scope of office or employment under circumstances in which a private person would be liable. We see no conflict between sections 286.28 and 768.28 and no reason why both cannot be given full effect. Ingraham. Reading the two sections in pari materia we reach the following conclusions which are pertinent to the issue at hand and contrary to the decision below.
1. Political subdivisions are authorized to purchase liability insurance pursuant to the conditions of sections 286.28(1) and 768.28(10).
2. When liability insurance is purchased, there will be no assertion of sovereign immunity, up to the coverage limits of the policy, regardless of whether such defense would be otherwise valid. § 286.28(2).
3. Sovereign immunity is waived and political subdivisions are liable for torts in the same manner as a private individual would be, except as noted below, regardless of whether liability insurance is purchased. § 768.28(1) and (5). This waiver is absolute, it is not contingent on the purchase of liability insurance as in section 286.28.
4. Unlike private tortfeasors, government tortfeasors are not liable for punitive damages or prejudgment interest. Further, statutory caps are placed on the damages which may be assessed against government unless there is insurance coverage in excess of the statutory cap. §§ 286.28(2); 768.28(5) and (10). However, the legislature may by special act direct payment of damages above the statutory cap. § 768.28(5).
In summary, we see no conflict between sections 286.28 and 768.28 or any reason why both should not be given full effect. We hold that purchase of tort liability insurance by a government entity, pursuant to section 286.28, constitutes a waiver of *1005 sovereign immunity up to the limits of insurance coverage and that this contingent waiver is independent of the general waiver in section 768.28.
Petitioner also urges that respondent's sovereign immunity has been waived by section 768.28 and that once the respondent made the discretionary decision to operate a swimming facility it assumed a common law duty to operate the facility safely. Accordingly, petitioner urges, she should be permitted to put on evidence that the respondent was negligent in not exercising reasonable care in supervising and operating the facility. In support, petitioner relies first on Trianon Park Condominium Association, Inc. v. City of Hialeah, 468 So.2d 912 (Fla. 1985), wherein we stated that the section 768.28 waiver of sovereign immunity did not create any new causes of action, but it did eliminate the immunity which had theretofore prevented recovery for existing common law torts. Petitioner then cites Pickett v. City of Jacksonville, 155 Fla. 439, 20 So.2d 484 (1945), and Ide v. City of St. Cloud, 150 Fla. 806, 8 So.2d 924 (1942), for the proposition that there was an existing common law duty for governments, once they decided to operate a swimming facility, to operate the facility safely just as a private individual would be required to do.
Respondent argues that the decision not to supervise the swimming facility was a planning level or discretionary decision for which there is immunity. In support, respondent cites Sarasota County v. Butler, 476 So.2d 216 (Fla. 2d DCA 1985); Jenkins v. City of Miami Beach, 389 So.2d 1195 (Fla. 3d DCA 1980); and Relyea v. State, 385 So.2d 1378 (Fla. 4th DCA 1980). In each of these cases, the district courts held that the decision not to provide supervisory personnel at government facilities was discretionary and therefore protected by sovereign immunity. Respondent also urges that while Pickett and Ide recognized a common law duty for municipalities, which were treated as private corporations, this duty did not exist for counties which were a political subdivision of the state and immune from suit.
We agree with petitioner on this point. Section 768.28 and Cauley v. City of Jacksonville, 403 So.2d 379 (Fla. 1981), abolished the distinction which once existed between municipalities and counties. The common law duty which Pickett and Ide recognized was also applicable to counties even though the counties were sovereignly immune from suit at the time Pickett and Ide issued. We addressed this point in Trianon Park when we emphasized "that section 768.28, Florida Statutes (1975), which waived sovereign immunity, created no new cause of action, but merely eliminated the immunity which prevented recovery for common law torts committed by the government." Trianon Park, 468 So.2d at 914. A government unit has the discretionary authority to operate or not operate swimming facilities and is immune from suit on that discretionary question. However, once the unit decides to operate the swimming facility, it assumes the common law duty to operate the facility safely, just as a private individual is obligated under like circumstances. We disapprove Sarasota County, Jenkins, and Relyea to the extent they conflict with the decision here.
We quash the decision of the district court below and remand for proceedings consistent with this opinion.
It is so ordered.
ADKINS, OVERTON, SHAW and BARKETT, JJ., concur.
SHAW, J., concurs specially with an opinion, in which ADKINS, J., concurs.
EHRLICH, J., concurs in result only with an opinion.
McDONALD, C.J., dissents with an opinion, in which BOYD, J., concurs.
BOYD, J., dissents with an opinion, in which McDONALD, C.J., concurs.
SHAW, Justice, specially concurring.
I concur fully with the majority decision. I would go further, however, and hold that *1006 section 768.28, Florida Statutes (1975), completely waived sovereign immunity and there is no immunity for either planning or operational level activities. This artificial distinction has no foundation in either the constitution or section 768.28 and should be discarded. In a tort suit against a government entity, we should apply the same law as in a tort suit between private individuals: whether there was a duty, whether the duty was violated, and whether the violation caused injury. See my dissents to Trianon Park Condominium Association, Inc. v. City of Hialeah, 468 So.2d 912 (Fla. 1985); Everton v. Willard, 468 So.2d 936 (Fla. 1985); Carter v. City of Stuart, 468 So.2d 955 (Fla. 1985); Reddish v. Smith, 468 So.2d 929 (Fla. 1985); and Duvall v. City of Cape Coral, 468 So.2d 961 (Fla. 1985).
A brief review of the legal posture of the case is necessary for a full appreciation of the scope of the majority decision. The trial court ruled respondents had waived sovereign immunity by the purchase of liability insurance, but granted summary judgment on the basis there were no genuine issues of material fact that the actions of another swimmer constituted an intervening cause of petitioner's injuries. In its initial opinion, the district court of appeal reversed on the basis there were genuine issues of material fact precluding summary judgment. However, on rehearing, the district court of appeal issued the decision now under review holding that respondents were sovereignly immune from suit. As I read the majority opinion, it simply holds that respondents are not sovereignly immune and have a duty to exercise reasonable care in the operation and maintenance of the swimming facility.[*] It does not hold, as the dissenters would seem to imply, that there was a specific duty to assign lifeguards nor does it express any opinion on whether respondents were actually negligent or whether there was an intervening cause which caused petitioner's injuries. The latter issues are normally resolved by the trier-of-fact and it is inappropriate for us to comment given the posture of the case.
ADKINS, J., concurs.
EHRLICH, Justice, concurring in result only.
I concur with the result of the majority.
The trial court found: 1) that the Board's decision whether or not to provide lifeguards or other supervisory personnel for the Blue Bird Springs facility was a discretionary, planning-level decision for which it is immune from tort liability; 2) that the purchase of insurance pursuant to section 286.28, Florida Statutes (1983), constituted a waiver of sovereign immunity to the extent of the Board's liability insurance policy limits; 3) that there was no liability on the part of the Board because plaintiff's injury was caused by an independent intervening efficient cause. The trial court thus entered a summary judgment for the Board.
The district court of appeal accepted the uncontested trial court ruling that the decision of the Board to provide or not provide supervisory personnel with the park was a discretionary planning-level decision and concluded that the correctness of that ruling was not before it. The Board cross-appealed the trial court ruling with respect to the waiver of sovereign immunity by the purchase of liability insurance. The district court of appeal concluded that such purchase did not waive sovereign immunity and since a planning level decision was involved, the Board was immune from suit. The district court of appeal did not address the trial court's ruling that the plaintiff's injury was caused by an independent intervening efficient cause.
The majority holds correctly, in my opinion, that the purchase of liability insurance does constitute a waiver of sovereign immunity to the extent of the Board's liability *1007 insurance policy limits, and as far as I am concerned, that is the only issue before us, and it is a narrow one. I do not believe it is necessary for the Court to go outside that issue, and as I view it, everything else within the opinion is dicta. I thus respectfully disagree with Justice Shaw as to the holding of the Court's decision.
I also respectfully disagree with Justice McDonald's dissent on the effect of the purchase of liability insurance pursuant to section 286.28. That section long antedated the enactment of section 768.28, and was and is only limited as to its applicability by its terms.
Arguably, when section 768.28(10) was enacted in 1973 it limited the waiver effect of liability insurance to actions which may be brought pursuant to section 768.28. However, when section 768.28(10) was amended four years later and the legislature deleted all references to the nonapplicability of sovereign immunity when the governmental entity carried liability insurance, I interpret that legislative action to mean that whatever limiting effect section 768.28(10) may have had on the applicability of section 286.28 to the waiver of government immunity to the extent of liability coverage, was no longer in existence.
It is my view that section 286.28 gives a governmental entity the option of providing full redress, up to the applicable policy limits, for injury and damage which are a proximate result of negligence by the entity. There is no requirement that the governmental entity buy insurance, but once it does so, then the terms of the legislative act authorizing the purchase of such liability insurance, is applicable.
The penultimate paragraph of the Court's opinion is cryptic and perhaps confusing. I must confess I do not know what the district court of appeal and the trial court, either or both, are called upon to do by the Court's opinion upon remand.
McDONALD, Chief Justice, dissenting.
Because I believe that the majority opinion both misconstrues the doctrine of sovereign immunity and embarks upon a course which can only impose an egregious financial burden on local governments across the state, I dissent. I agree that Citrus County has a duty to exercise reasonable care to the users of its parks in the operation and maintenance of those parks. My disagreement with the majority surrounds, in part, the definition of "operations" as set forth in the insurance waiver statute, section 286.28, Florida Statutes. I believe that the decision to employ or not to employ lifeguards or supervisory personnel is a planning function not waived by the purchase of insurance or by section 768.28, Florida Statutes. Had the plaintiff's injury been caused by a defect on the premises such as an unsafe dock, providing a dangerous diving area, defective dressing facilities or the like, I would unhesitatingly join in ruling that the county has no sovereign immunity and may be liable.[1]
In Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979), this Court concluded that despite the broad language of section 768.28, Florida Statutes (1975), sovereign immunity still shielded the state from liability for certain policy-making, planning, or judgmental government functions. 371 So.2d at 1020. We recognized that, despite the legislature's intent to waive sovereign immunity on a broad basis, "certain functions of coordinate branches of government may not be subjected to scrutiny by judge or jury as to the wisdom of their performance." Id. at 1022. For us to have ruled otherwise and imposed liability on government entities for these planning level decisions would not only have thrown governing bodies into turmoil and saddled them with a potentially crushing burden of financial liability, but would also have caused the judicial branch of government to trespass into the domain of the legislative branch. Therefore, in *1008 order to avoid this result, section 768.28 has been interpreted as waiving liability only as to "operational level" decisions. I believe the same to be true for Section 286.28.
Since Commercial Carrier, the "planning level" versus "operational level" dichotomy has become settled law throughout the state. See, e.g., Trianon Park Condominium Association, Inc. v. City of Hialeah, 468 So.2d 912 (Fla. 1985); Payne v. Broward County, 461 So.2d 63 (Fla. 1984); Department of Transportation v. Neilson, 419 So.2d 1071 (Fla. 1982); Emig v. State, Department of Health & Rehabilitative Services, 456 So.2d 1204 (Fla. 1st DCA 1984), review dismissed, 475 So.2d 693 (Fla. 1985); Mathews v. City of St. Petersburg, 400 So.2d 841 (Fla. 2d DCA 1981), approved, 419 So.2d 1082 (Fla. 1982); Everton v. Willard, 426 So.2d 996 (Fla. 2d DCA 1983), approved, 468 So.2d 936 (Fla. 1985); Romine v. Metropolitan Dade County, 401 So.2d 882 (Fla. 3d DCA 1981), review denied, 412 So.2d 469 (Fla. 1982); Berry v. State, 400 So.2d 80 (Fla. 4th DCA), review denied, 411 So.2d 380 (Fla. 1981). By interpreting section 286.28, Florida Statutes (1981), as automatically waiving sovereign immunity for both planning and operational level activities the majority's ruling creates chaos out of relative order.
The principal ramifications of the majority's interpretation of section 286.28 are twofold. First, such an interpretation effectively punishes governmental entities for acting prudently and purchasing liability insurance. Although a city or county may have originally purchased insurance in order to protect against liability for operational activities, the purchase would now automatically waive any immunity that entity would otherwise enjoy for its planning level decisions. Treating insured entities less favorably than uninsured entities can only serve to encourage local governments to think twice before purchasing insurance. Second, reading section 286.28 as an unconditional waiver of sovereign immunity obliterates the planning/operational dichotomy. Despite the brief statements indicating that some planning decisions may still enjoy sovereign immunity, the majority fails to explain how such immunity could come about given its view of section 286.28. Apparently, whether a planning level decision would be shielded by sovereign immunity would depend wholly on whether the governmental entity involved carried liability insurance. If so, such a distinction is unjust and improper.
Instead of interpreting section 286.28 as an all-encompassing waiver of sovereign immunity, that section should be read as a waiver of liability only for operational decisions and conduct. I find that the legislative histories of sections 286.28 and 768.28 support this alternative interpretation. Section 286.28 had been in existence long before the legislature adopted section 768.28 in 1973. As originally adopted, subsection 768.28(10) read, in pertinent part:
If the state or its agent or subdivision is insured against liability for damages for any negligent or wrongful act, omission, or occurrence for which action may be brought pursuant to this section, then the limitations of this act shall not apply to actions brought to recover damages therefor to the extent such policy of insurance shall provide coverage.
In 1977 the legislature repealed this provision and subsection (10) was redesignated as subsection (13). During this process, however, the legislature deleted all references to the nonapplication of sovereign immunity when the entity carried liability insurance. The new section 768.28 simply authorized the state and its agencies and subdivisions to purchase insurance. In affirmatively deleting any language which would support the majority's interpretation of section 286.28, the legislature has demonstrated that it did not intend to waive all sovereign immunity to the extent of liability coverage. Accordingly, I strongly disagree with the majority's interpretation of section 286.28.
Due to the majority's sweeping interpretation of section 286.28, the opinion never squarely addresses whether the placement of supervisory personnel in Citrus County *1009 parks is a planning level decision. If it is, and I believe that it is, sovereign immunity should shield the county from suit. On the other hand, if the placement of supervisory personnel in county parks is an operational level decision, sovereign immunity would not bar Avallone's lawsuit.
In answering similar questions, the courts of this state have uniformly found staffing and personnel allocation decisions to be planning level functions. For example, in Sarasota County v. Butler, 476 So.2d 216 (Fla. 2d DCA 1985), the mother of a nine-year-old boy who drowned at South Lido Beach sued Sarasota County, alleging, inter alia, that the county negligently failed to provide lifeguards. The district court, finding for Sarasota County, ruled that the presence or absence of lifeguards was a planning level decision for which sovereign immunity barred suit. A variety of other cases have reached similar conclusions. See Kitchens v. Asolo State Theatre, Inc., 465 So.2d 556 (Fla. 1st DCA) (the state is generally immune from suit for initial staffing decisions at its theater), review denied, 472 So.2d 1180 (Fla. 1985); Higdon v. Metropolitan Dade County, 446 So.2d 203 (Fla. 3d DCA 1984) (failure by police to prevent riot and to stop motorists from driving into the riot area was a planning level function and thus immune from suit); Jenkins v. City of Miami Beach, 389 So.2d 1195 (Fla. 3d DCA 1980) (city's decision not to provide supervisory personnel in its park at night was a planning decision for which the city could not be liable in tort); Relyea v. State, 385 So.2d 1378 (Fla. 4th DCA 1980) (state university's decisions concerning whether to provide security guards and parking attendants were clearly discretionary planning decisions and thus the state and its agencies enjoyed sovereign immunity); Ellmer v. City of St. Petersburg, 378 So.2d 825 (Fla. 2d DCA 1979) (decision to remove police from area in which riot was imminent was a planning level decision). See also Henderson v. City of St. Petersburg, 247 So.2d 23 (Fla. 2d DCA) (municipality not liable for failure to supply general police protection), cert. denied, 250 So.2d 643 (Fla. 1971). The majority's disapproval of these decisions is both unwarranted and unwise.
As this Court stated in Wong v. City of Miami, 237 So.2d 132 (Fla. 1970), the right to determine strategy and tactics for the deployment of personnel is inherent in the police power of sovereign states. The government cannot function unless it is allowed to make those decisions without having to worry about potential allegations of negligence. Id. at 134. Subjecting governmental entities to liability for these types of decisions is neither a practical nor realistic approach. Government cannot be all things to all people. From a theoretical standpoint it might be desirable for Citrus County to place a full complement of supervisory personnel in every park as well as along every river, lake, and beach in Citrus County in order to safeguard the population. Unfortunately, Citrus County, along with every other governmental entity in this state, must take into account practical considerations such as budgetary constraints when deciding how to allocate its limited funds among a virtually unlimited number of needs. See Relyea, 385 So.2d at 1382 (decision whether to provide guards and attendants are partially based upon budgetary considerations). Accordingly, the majority has committed an egregious error in not finding Citrus County's nonassignment of supervisors to Bluebird Springs to be an immune planning level decision. It has substituted its judgment above that of the governing body of Citrus County.
In addition to its failure to rule in favor of immunity, the majority has compounded its errors by suggesting that this case should be allowed to reach a jury. Bluebird Springs was donated to the county, which thereafter maintained the three-acre park for the enjoyment of its citizens. Avallone does not allege that the limited alterations made to Bluebird Springs' natural state were designed or maintained in an unreasonable or hazardous manner. See Mathews v. City of St. Petersburg, 400 So.2d 841 (Fla. 2d DCA 1981), approved, 419 So.2d 1082 (Fla. 1982). More specifically, *1010 Avallone does not allege that the condition of the dock contributed to her injuries in any way. Nor has Avallone suggested that either the park or lake contained any hidden dangers or traps.[2] Instead, Avallone admitted during her deposition that her friends' horseplay caused the accident. Although the extent to which Avallone voluntarily participated in these activities is questionable, whether she actually consented to her friend carrying her over his shoulder and onto the dock should not affect the county's liability. If she consented to her friends' actions, Avallone is legally bound to accept the obvious dangers inherent in their activities. Payne v. City of Clearwater, 155 Fla. 9, 19 So.2d 406 (1944). If, on the other hand, her friends acted without Avallone's consent, their actions constituted the sole proximate cause of her injuries. The mere occurrence of an accident on the county's dock does not give rise to an inference of negligence on the part of the county. Cassel v. Price, 396 So.2d 258 (Fla. 1st DCA 1981).
Although Avallone insists the county acted negligently in failing to provide lifeguards or other supervisory personnel at dockside to save her from the foolhardiness of her friends, I disagree. Avallone had visited this park a dozen times before this accident and knew of the absence of supervisory personnel. It is difficult for me to perceive a legal basis for her claiming a breach of duty to provide a lifeguard when she knowingly accepted the use of the premises without one.
Unquestionably, Citrus County owes a duty of reasonable care to all who utilize its parks. Pickett v. City of Jacksonville, 155 Fla. 439, 20 So.2d 484 (1945); Payne, 155 Fla. at 13, 19 So.2d at 408; Ide, 50 Fla. at 808, 8 So.2d at 925. The county, however, is not, nor should it be, the insurer of the safety of all who utilize its park facilities. Payne, 155 Fla. at 13, 19 So.2d at 408; Biltmore Terrace Associates v. Kegan, 130 So.2d 631 (Fla. 3d DCA 1961), cert. discharged, 154 So.2d 825 (Fla. 1963). Prior to the instant decision, the courts of this state generally followed the rule that a governmental entity would be liable for injuries such as those sustained by Avallone only when the governmental entity created the dangerous condition, knew it to be dangerous, and the danger was not readily apparent to those persons who might sustain an injury as a result of it. E.g., City of St. Petersburg v. Collum, 419 So.2d 1082 (Fla. 1982); Hill v. City of Lakeland, 466 So.2d 1231 (Fla. 2d DCA), review denied, 476 So.2d 674 (Fla. 1985); Sarasota County, 476 So.2d at 217; Barrera v. State Department of Transportation, 470 So.2d 750 (Fla. 3d DCA), review denied, 480 So.2d 1293 (Fla. 1985). If a plaintiff could show this three-part test had been met, such plaintiff could circumvent sovereign immunity. Applying this test, and recognizing the relatively simple logistics involved in staffing the one or two public pools a municipality might operate, a city or county might reasonably be held liable for failing to provide lifeguards at a manmade public swimming pool frequented by large numbers of people. See Pickett, 155 Fla. at 444, 20 So.2d at 487 (absence of lifeguard at swimming pool is negligence). On the other hand, doing away with this test and extending liability to Citrus County for injuries occurring at a natural lake is quite another matter.
Our state is blessed with an abundance of natural rivers, lakes, streams, beaches, and woodlands. Many of these are dotted with parks and recreational areas maintained for the enjoyment of residents and tourists alike. Indeed, with Florida's explosive growth, the proliferation of parks and other natural areas should be strongly encouraged. Such an expansion of parklands cannot occur, however, if state and local governments face unbridled liability for every injury occurring in these areas. Quite simply, local governments such as *1011 Citrus County do not have the financial resources to provide a full-time supervisory staff at each and every place of potential injury. Faced with the prospect of having to do so, local governments may have no choice but to close down small parks such as Bluebird Springs. Moreover, the state government would not be immune from the ramifications of the majority's decision. At a time when the state's budget is already stretched to the limit, will the state be expected to provide a permanent staff at every roadside park? Should the state be required to place a lifeguard at every bend of any river which happens to run through our state parks? Once this Court imposes a duty upon local governments to assign supervisory personnel to parks such as Bluebird Springs there is no rational basis by which to restrict the result.
I believe the Court is making a serious error in disapproving Sarasota County, Jenkins, and Relyea in favor of allowing recovery in the case at bar. Our actions today have thrown the principles of sovereign immunity into confusion. Moreover, this ruling will have an egregious financial impact on state and local governments and will discourage the statewide expansion of parklands.
Accordingly, I would approve the decision of the district court.
BOYD, J., concurs.
BOYD, Justice, dissenting.
I respectfully dissent to the decision of the Court and agree with the well-reasoned dissent of Justice McDonald. The purchase of insurance under section 286.28, Florida Statutes (1983), has nothing whatsoever to do with the questions of whether liability, or immunity, exist. Reading section 286.28 in pari materia with section 768.28, Florida Statutes (1983), it is clear to me that the prohibition against an insurer raising the defense of sovereign immunity was not intended to preclude a political subdivision's reliance on the defense of governmental immunity for functions to which immunity still applies under section 768.28 as construed in Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979). The mere purchase of insurance against the possibility of liability being imposed for non-immune operational activities does not, in my view, function as a waiver of retained governmental immunity from suit for discretionary, planning-level, policy-determining acts.
The decision of the district court, affirming the summary judgment, may be sustained on grounds entirely unrelated to the doctrine of governmental immunity. The trial court granted summary judgment on the ground that, beyond any material factual dispute, the plaintiff's injuries were directly caused by the actions of another person in lifting her up and dropping her from the dock at the lakeside beach and swimming area. This act was, the court found, the effective intervening cause of the incident, completely severing any causal connection between the negligence, if any, of the county, and the plaintiff's injuries. Under this determination, it was unnecessary to decide whether the county was negligent and whether the county was immune. These questions became hypothetical and immaterial. This factual determination on summary judgment was clearly correct, and the district court's affirmance on other grounds does not detract from the essential legal correctness of that determination.
If the county had done that which, under the theory of this complaint, it should have done, there would have been a lifeguard or supervisor present at the swimming area. Query whether one lifeguard would have been enough; if it was foreseeable that more than one group of swimmers might start "roughhousing" on the dock at the same time, the placement of only one lifeguard might be deemed negligence. The point is that the probability that such an employee would effectively have prevented this accident from taking place is a purely speculative question. This same accident, caused by the intentional, reckless, or negligent conduct of one or more other users of the recreational facility, could just as easily have happened at a private country-club *1012 swimming pool surrounded by lifeguards. Completely aside from the question of governmental immunity and the question of negligence, it is simply not fair to allow the people of Citrus County to be held responsible for the plaintiff's injuries when it is clear upon undisputed facts that no act, decision, or conduct of the county caused the accident in question.[*] If the plaintiff did not consent to being lifted up and carried to the dock, then the facts alleged can be interpreted as showing that she was the victim of a battery. Under this view of the evidence, her injuries were the result of an unpermitted, direct interference with her physical person wrongfully perpetrated by another or others. The majority would allow trial of the case to go forward based on the county's failure to prevent this wrongful act. I must respectfully disagree with this.
I fully agree with Justice McDonald that if there were any allegation of a dangerous condition of the premises the case would be very different. A rotten or missing plank on the dock, a structurally unsound piling, or any other dangerous condition or defective characteristic of the swimming area, if alleged to have contributed to the incident, would present very different issues. But there was no such dangerous condition. The theory of the claim is that the lack of supervision made the swimming area dangerous. However, as Justice McDonald correctly points out, the deployment of protective personnel by a local government is a policy matter and a government is absolutely immune from suit for the consequences thereof. Even if there had been a lifeguard present, who would perhaps have been kept busy keeping the younger children from pushing one another off the dock, there would have been no guarantee that the lifeguard could have prevented misconduct by older swimmers occurring at the same time. Had there been such a lifeguard, perhaps the theory of the lawsuit would be that the county should have deployed a sworn law officer with arrest powers to prevent swimmers from inflicting injuries upon one another by their intentional or reckless violent acts. As the many authorities cited by Justice McDonald show, a county is absolutely immune from suit for this kind of legislative judgment.
In Department of Transportation v. Neilson, 419 So.2d 1071 (Fla. 1982), this Court ruled:
[A]bsolute immunity attaches to "policy-making, planning, or judgmental governmental functions." [Commercial Carrier Corp. v. Indian River County] 371 So.2d at 1020. The underlying premise for this immunity is that it cannot be tortious conduct for a government to govern. Our decision [in Commercial Carrier] recognized that there are areas inherent in the act of governing which cannot be subject to suit and scrutiny by judge or jury without violating the separation of powers doctrine.
419 So.2d at 1075. The fact that a different policy decision by government might conceivably have prevented an accident is therefore no basis for the imposition of liability on the governmental entity in question. E.g., Payne v. Broward County, 461 So.2d 63 (Fla. 1984). When the state waived sovereign immunity for itself and its subdivisions, it did not intend to guarantee that governments would always protect their citizens from any and all of the dangers of the world or else respond in damages.
Citrus County is a rural county and is toward the lower end of the list of Florida counties when ranked in terms of economic resources and strength of tax base. Under the law as announced by the majority opinion, publicly owned recreational facilities, previously open to the public without charge, will very likely either be closed or be operated under a system of user fees. Rural counties will not be able to employ lifeguards at such facilities (or pay the increased liability insurance premiums) *1013 without charging user fees. A significant portion of the citizenry in these rural counties will not be able to pay such admission fees charged to all users of recreation areas. The net result will be that while the children of the affluent will be able to swim at country clubs, and the children of the more prosperous working people will be able to pay the entry fees for the use of public recreation areas, the children of the poor will be deprived of the experience of swimming in the summertime. By significantly increasing the burden of governmental responsibility to the few who are accident victims, the Court's decision hampers government's ability to provide services and amenities to all. I therefore respectfully dissent.
McDONALD, C.J., concurs.
NOTES
[*] The issues of sovereign immunity and duty should be addressed separately. These are two completely independent issues. The presence of duty does not abrogate immunity and the absence of immunity does not create a duty. The operational versus planning dichotomy hopelessly commingles the issues of sovereign immunity and duty and should be abandoned.
[1] Section 375.251, Florida Statutes, would exempt private persons from liability under these circumstances.
[2] If the lake, park, or its facilities had contained any such hidden danger or trap, the county could not have claimed immunity even for a planning level decision. Payne, 461 So.2d at 65. See Brevard County v. Jacks, 238 So.2d 156 (Fla. 4th DCA 1970); Ide v. City of St. Cloud, 150 Fla. 806, 8 So.2d 924 (1942); Turlington v. Tampa Electric Co., 62 Fla. 398, 56 So. 696 (1911).
[*] The fact that an insurer will pay the damages does not change the fact that the people of the county are being held responsible. Liability insurance is not payable unless the insured is found liable.