563 So.2d 755 (1990)
EVANSTON INSURANCE COMPANY, Appellant,
v.
CITY OF HOMESTEAD, D/B/a James Archer Smith Hospital, a Political Subdivision of the State of Florida, Appellee.
No. 89-1575.
District Court of Appeal of Florida, Third District.
June 12, 1990.
*756 Holland & Knight and Daniel S. Pearson, Amy D. Ronner, Miami, and Julian Clarkson, Tallahassee, for appellant.
Fowler, White, Burnett, Hurley, Banick & Strickroot and Patricia I. Murray and Henry Burnett, Miami, for appellee.
Before BARKDULL, NESBITT and FERGUSON, JJ.
PER CURIAM.
Evanston Insurance Company appeals from an adverse judgment on the pleadings. Evanston Insurance Company sold the city of Homestead an excess hospital professional liability policy effective February 2, 1985, providing coverage in excess of $500,000.00 and up to a policy limit of $3,000,000.00. The policy provided that the city would indemnify Evanston for settlement of claims for which the City was legally liable when the award of the claim exceeded the retained limit of $500,000.00.[1]
A medical malpractice claim was presented to the City and Evanston. Evanston admitted the underlying tort claim presented a $5,000,000.00 exposure so it elected, under the terms of the policy, to negotiate a settlement of the claim, which was successfully accomplished for $2,700,000.00. Evanston paid the full $2,700,000.00 during settlement negotiations. Evanston declared the policy obligated the City to pay $500,000.00 for the underlying tort claim, and made demand upon the City for that amount, even though the City, (JASH), advised Evanston prior to settlement that it was prohibited from making the demanded payment by Section 768.28, Florida Statutes (1985).[2] Evanston, however, proceeded to settle the claim and make payment in full.
When the City would only pay Evanston $200,000.00 of the $500,000.00 demanded, *757 Evanston brought the instant suit alleging breach of contract seeking the remaining $300,000.00 of the alleged retained limit, plus $11,303.48 as claims expenses. The City defended, alleging that pursuant to sovereign immunity, its legal liability for the claim could not exceed $200,000.00. Section 768.28(5), Florida Statutes (1985). Evanston countered alleging that this was an action on a contract to which Section 768.28(5), Florida Statutes (1985) does not apply. After a hearing on its motion for judgment on the pleadings, the trial court entered the order appealed in favor of the city. We affirm.
The clear wording of the contract[3] shows that the City's obligation to indemnify is predicated upon Evanston's payment on the tort claim of an amount the City is legally obligated to pay.[4] The City, pursuant to Art. X, Section 13 Florida Constitution (1968), Sections 768.28(5) and 286.28(2), Florida Statutes (1985),[5] has not waived sovereign immunity which would otherwise preclude the City from being legally obligated to pay anything. In the instant case, the City's waiver of immunity can be to the extent of, and only to the extent of, any insurance it has purchased. See Avallone v. Board of County Commissioners of Citrus County, 493 So.2d 1002 (Fla. 1986); Commercial Carrier Corporation v. Indian River County, 371 So.2d 1010 (Fla. 1979); Article X, Section 13, Florida Constitution (1968); Section 286.28(2), Florida Statutes (1985), when, as in the instant case, the City has purchased an excess coverage of insurance that does not come into play until the amount sued on a tort claim is far in excess of the City's $200,000.00 legislative mandated waiver of immunity. This results in a $300,000.00 gap for which the City has purchased no insurance whatsoever. Under Section 768.28(2), Florida Statutes (1985), there can be no waiver of immunity. See Avallone v. Board of County Commissioners of Citrus County, supra; Commercial Carrier Corporation v. Indian River County, supra; Donisi v. Trout, 415 So.2d 730 (Fla. 4th DCA 1981). Evanston has brought this action alleging breach of contract for which it alleged there is no immunity, and thereby *758 by seeks to circumvent the constitutional and statutory requirements of Art. X, Section 13, Florida Constitution (1968), and Section 286.28(2), Florida Statutes (1985). This we cannot permit. A contract may not give validity to an illegal act, notwithstanding upon whom the hardship should fall. See Nizzo v. Amoco Oil Company, 333 So.2d 491 (Fla. 2d DCA 1976); Schaal v. Race, 135 So.2d 252 (Fla. 2d DCA 1961). There can be no question that in this case Evanston had full knowledge before settlement of the claim of the City's position, that under the doctrine of soverign immunity it could not pay the requested $300,000.00.[6] Therefore, Evanston in paying the retainer limit herein acted as a volunteer.
Evanston's claim for reimbursement of claims expenses is equally without merit. The statutory maximum amount of recovery is an absolute limit to a city government's liability, including damages, costs and post judgment interest. See Godoy v. Dade County, 428 So.2d 662 (Fla. 1983); DeAlmeida v. Graham, 524 So.2d 666 (Fla. 4th DCA 1987).
We find the other points raised by the appellant to be without merit. Therefore, the order appealed is hereby affirmed.
Affirmed.
NOTES
[1] PERTINENT POLICY PROVISIONS

* * * * * *
(2) Defense, Settlement: ... The Company, at its sole option, may settle, without the consent of the Insured, any claim involving the limits of liability of this policy. If the Company elects to pay any or all of the amount of the retained limit or any amount in excess of the limits of liability of this policy to effect settlement of a claim or suit, the Insured shall promptly reimburse the Company for such part of the retained limit and any amount in excess of the limits of liability of this policy which have been paid by the Company... ." (policy page 2)
* * * * * *
Patient Personal Injury Liability Endorsement The definition of Hospital Professional Liability is extended to include payment on behalf of the Insured of all sums, in excess of the retention amount stated in the declarations, which the insured shall become legally obligated to pay as damages because of personal injury to a patient. (Emphasis added)."
[2] Page 2 of the Complaint reads in part as follows:

7. In response to said demand, the Defendant, JASH tendered $200,000.00 of the $500,000.00 retained limit.
8. Repeated demands were made upon the Defendant, JASH, by Plaintiff, The Company, for payment of the full amount of the retained limit, pursuant to the terms and conditions of the subject policy of insurance.
9. Upon the Defendant, JASH's refusal to comply with the terms and conditions of the subject policy, and therefore, breach of said policy, Plaintiff, The Company elected to pay without waiving any of its rights as against the Defendant, JASH, the remainder of the retained limit in the amount of $300,000.00 in order to negotiate and effect a good faith settlement of the underlying action.
[3] See Footnote 1.
[4] See Footnote 1.
[5] ART. X, SEC. 13

Suits Against the State
Provision may be made by general law for bringing suit against the state as to all liabilities now existing or hereafter originating.
SECTION 768.28(5)
(5) The state and its agencies and subdivisions shall be liable for tort claims in the same manner and to the same extent as a private individual under like circumstances, but liability shall not include punitive damages or interest for the period before judgment. Neither the state nor its agencies or subdivisions shall be liable to pay a claim or a judgment by any one person which exceeds the sum of $100,000 or any claim or judgment, or portions thereof, which, when totaled with all other claims or judgments paid by the state or its agencies or subdivisions arising out of the same incident or occurrence, exceeds the sum of $200,000. However, a judgment or judgments may be claimed and rendered in excess of these amounts and may be settled and paid pursuant to this act up to $100,000 or $200,000, as the case may be; and that portion of the judgment that exceeds these amounts may be reported to the Legislature, but may be paid in part or in whole only by further act of the Legislature. The limitations of liability set forth in this subsection shall apply to the state and its agencies and subdivisions whether or not the state or its agencies or subdivisions possessed sovereign immunity before July 1, 1974.
SECTION 286.28(2)
(2) In consideration of the premium at which such insurance may be written, it shall be part of any insurance contract providing said coverage that the insurer shall not be entitled to the benefit of the defense of governmental immunity of any such political subdivisions of the state in any suit instituted against any such political subdivision as herein provided, or in any suit brought against the insurer to enforce collections under such an insurance contract; and that the immunity of said political subdivision against any liability described in subsection (1) as to which such insurance coverage has been provided, and suit in connection therewith are waived to the extent and only to the extent of such insurance coverage; provided, however, no attempt shall be made in the trial of any action against a political subdivision to suggest the existence of any insurance which covers the whole or in part any judgment or award which may be rendered in favor of the plaintiff, and if a verdict rendered by the jury exceeds the limit of the applicable insurance, the court shall reduce the amount of said judgment or award to a sum equal to the applicable limit set forth in the policy.
[6] See Footnote 2.