Ms. Phyllis O. Douglas Board Attorney Dade County Public Schools School Board Administration Building 1450 Northeast Second Avenue Miami, Florida 33132
Dear Ms. Douglas:
On behalf of the Dade County School Board you have asked for my opinion on substantially the following questions:
1. Is the School Board of Dade County authorized to purchase insurance for or indemnify[1] school board contractors or subcontractors who work on capital construction projects of the board?
2. Is the School Board of Dade County authorized to pay in excess of 100,000 per claim or 200,000 per occurrence pursuant to an insurance policy in effect with increased coverage?
In sum:
1. The School Board of Dade County is not authorized to purchase insurance for or indemnify school board contractors or subcontractors who work on capital construction projects of the board.
2. The School Board of Dade County may obtain insurance coverage in excess of the statutory limits of 100,000 or 200,000 in anticipation of any liability under a claims bill, however, by obtaining such coverage, s. 768.28, F.S. (1992 Supp.), provides that the school board is not deemed to have waived its defense of sovereign immunity or to have increased its limits of liability.
Question One
Section 10, Art. VII, State Const., prohibits the state or counties or municipalities or any agency thereof from using, giving, or lending its taxing power or credit to aid any private interest or individual. The purpose of the constitutional provision is "to protect public funds and resources from being exploited in assisting or promoting private ventures when the public would be at most only incidentally benefited."[2]
Furthermore, s. 1, Art. VII, State Const., impliedly limits the imposition of taxes and the expenditures of tax revenues to public purposes.[3] As a general principle, the power to levy and collect taxes and the power to appropriate public funds are coexistent and if a tax cannot be levied for a particular purpose, no appropriation of public money can be made for such purpose.[4]
Based on these considerations, this office has consistently concluded that, in the absence of statutory authority for such an agreement, governmental entities are prohibited from agreeing to indemnify private entities. It was concluded in AGO 84-103 that a municipality was prohibited by s. 10, Art. VII, State Const., from agreeing to indemnify a private for profit corporation for financial losses which might be suffered over the term of the agreement in the provision of emergency medical services to the inhabitants of a three county area. With regard to a state administrative agency, in AGO 90-21 it was determined that the Department of Corrections was not authorized to agree by contract to release a private company from liability and to indemnify and hold the company harmless from any damage, loss, or injury caused by the sole or joint negligence of the private company, its employees or agents.[5] You have suggested that a district school board may possess home rule powers to enter into such indemnity agreements. While school districts, acting pursuant to s. 230.03(2), F.S., may exercise any power for school purposes in the operation, control, and supervision of the free public schools in its district unless expressly prohibited by the state constitution or general law, the relation of this type of agreement to the operation, control, and supervision of public schools is questionable.[6]
In addition, as this office explained in AGO 83-72, a state statute which distinctly specifies the manner or method in which a district school board is required to act prevails over a conflicting method or procedure proposed or adopted by a district school board. Thus, the existence of specific statutory provisions regulating the purchase of insurance by district school boards would suggest that other forms of insurance, including indemnity agreements, are not favored.
In broad terms, insurance is a contract by which one party, for compensation called the premium, assumes particular risks of the other party and promises to pay to him or his nominee a certain or ascertainable sum of money on a specified contingency. The predominant feature is the granting of indemnity, or security against loss, for a stipulated consideration, and in essence it is a contract of indemnity against contingent loss.[7] Because insurance is an indemnification agreement and primarily constitutes a benefit to the individual rather than the public, the Legislature has specifically authorized governmental agencies to purchase insurance for their officers and employees, including those of school boards.
School boards are expressly authorized to self-insure for health, accident, and hospitalization coverage for officers and employees of the school board in s. 112.08, F.S. (1992 Supp.); for workers' compensation coverage in s. 440.38, F.S.; for claims arising from acts of negligence in s. 768.28, F.S. (1992 Supp.); and for civil rights actions under s. 111.072, F.S. In addition, school boards are required to insure school property pursuant to s. 230.23(9)(d), F.S. (1992 Supp.). Section 627.6551, F.S., authorizes the purchase of insurance for a group of teachers or students of an institution of learning or a school district. Blanket health insurance is authorized for students and teachers under the policy issued to a school, district school system or other institution of learning under s. 627.659, F.S.
However, these provisions authorize the school district to provide insurance for officers and employees of the district, and their dependents. For example, s. 112.08(2)(a), F.S., states that:
Every local governmental unit is authorized to provide and pay out of its available funds for all or part of the premium for life, health, accident, hospitalization, legal expense, or annuity insurance, or all or any kinds of such insurance, for the officers and employees of the local governmental unit and for health, accident hospitalization, and legal expense insurance for the dependents of such officers and employees upon a group insurance plan and, to that end, to enter into contracts with insurance companies or professional administrators to provide such insurance.
While the terms "officer" and "employee" are not defined for purposes of this section, s. 112.061, F.S., relating to travel expenses of public officers and employees defines an "[o]fficer" as "[a]n individual who in the performance of his official duties is vested by law with sovereign powers of government and who is either elected by the people, or commissioned by the Governor and has jurisdiction extending throughout the state, or any person lawfully serving instead of either of the foregoing two classes of individuals as initial designee or successor."[8] An "[e]mployee" is defined as "[a]n individual, whether commissioned or not, other than an officer or authorized person as defined herein, who is filling a regular or full-time authorized position and is responsible to an agency head."[9] The mere fact of contracting with a school board to undertake capital construction projects would not appear to qualify either contractors or their subcontractors as "officers" or "employees" of the school district.
Thus, the school district would appear to be precluded from extending insurance benefits to contractors or subcontractors who work on capital construction projects for the district.[10] In fact, current rules of the Department of Education require subcontractors "to carry all required insurance such as fire, vandalism, malicious mischief, extended coverage, workman's compensation and public liability" for particular projects.[11] I would note that the statutes do provide that an individual self-insurer with a net worth of not less than 250,000,000 may assume the worker's compensation liability of its contractors and subcontractors which are employed by or on behalf of the self-insurer.[12] You have presented this office with no information on whether this statute would apply to your situation but I bring it to your attention in the event it may be helpful.
Therefore, I find no statutory authority for the district school board to provide insurance for or indemnify either contractors or subcontractors who work on capital construction projects.
Question Two
You have not requested an answer to this question contingent on my response to Question One. Therefore, I assume that this issue arises independently of Question One and express my opinion as follows.
Section 768.28, F.S. (1992 Supp.), provides, in part, that:
In accordance with s. 13, Art. X, State Constitution, the state, for itself and for its agencies or subdivisions, hereby waives sovereign immunity for liability for torts, but only to the extent specified in this act. Actions at law against the state or any of its agencies or subdivisions to recover damages in tort for money damages against the state or its agencies or subdivisions for injury or loss of property, personal injury, or death caused by the negligent or wrongful act or omission of any employee of the agency or subdivision while acting within the scope of his office or employment under circumstances in which the state or such agency or subdivision, if a private person, would be liable to the claimant, in accordance with the general laws of this state, may be prosecuted subject to the limitations specified in this act.[13] Thus, the state, for itself, its agencies and subdivisions,[14] has waived its absolute immunity from suit to the extent set forth in the statute.
The statute goes on to provide that, generally, the officers, employees, and agents of a state agency or subdivision, such as a school district, are not personally liable in tort and may not be named defendants in any action for injuries or damages suffered as a result of any act, event or omission of action in the scope of their employment or function. The exclusive remedy for such an injury is an action against the governmental entity, or the head of the entity in his or her official capacity.[15] The waiver of liability in s. 768.28, F.S. (1992 Supp.), is limited to 100,000 on any claim or judgment by one person or 200,000 for all claims or judgments arising out of the same incident or occurrence. Judgments may be claimed and rendered in excess of these amounts and may be settled and paid pursuant to the statute up to 100,000 or 200,000, as the case may be.[16]
That portion of the judgment exceeding these amounts may be reported to the Legislature, but may be paid in part or whole only by further act of the Legislature, i.e., a claims bill.[17] The statute authorizes self-insurance by the state, its agencies and subdivisions, and also permits these agencies to enter into risk management programs, or "to purchase liability insurance for whatever coverage they may choose, or to have any combination thereof, in anticipation of any claim, judgment, and claims bill which they may be liable to pay pursuant to this section."[18]
Thus, this office has determined that, despite the lack of authority to self-insure for other risks, s. 768.28, F.S., specifically authorizes "state agencies and subdivisions" to self-insure in anticipation of any claim, judgment or claims bill which they may be liable to pay pursuant to s. 768.28, F.S.(1992 Supp.).[19] As is specifically provided in s. 768.28(5), F.S. (1992 Supp.):
Notwithstanding the limited waiver of sovereign immunity provided herein, the state or an agency or subdivision thereof may agree, within the limits of insurance coverage provided, to settle a claim made or a judgment rendered against it without further action by the Legislature, but the state or agency or subdivision thereof shall not be deemed to have waived any defense of sovereign immunity or to have increased the limits of its liability as a result of its obtaining insurance coverage for tortious acts in excess of the 100,000 or 200,000 waiver provided above. Thus, a district school board may obtain insurance in excess of the limits of sovereign immunity established by s.768.28, F.S. (1992 Supp.), in anticipation of a claims bill which it may be liable to pay. However, by doing so, the school board does not waive its defense of sovereign immunity or increase its limits of liability. I would note that, prior to the amendment of s. 768.28(5), F.S. and the repeal of s. 286.28, F.S. 1975, by Ch. 87-134, Laws of Florida, the Florida courts had held that the purchase of liability insurance waived sovereign immunity up to the limits of the subdivision's coverage by such insurance.[20]
You note that the Third District Court of Appeal, in a 1990 case, Evanston Insurance Company v. City of Homestead,[21] cited to these old cases and determined that the city could waive its sovereign immunity to the extent of any insurance it had purchased.[22]
However, that case involved a medical malpractice claim covered by an insurance contract which was entered into in 1985, prior to enactment of Ch. 87-134, Laws of Florida, and was governed by the law as interpreted in those earlier cases.
In addition, the suit in that case was an action for breach of contract rather than an action in tort which is covered by s.768.28, F.S. (1992 Supp.). The suit was founded in contract in an effort to avoid the sovereign immunity limitation.
The court refused to permit this circumvention of the constitutional and statutory requirements and noted that "[t]he statutory maximum amount of recovery is an absolute limit to a city government's liability, including damages, costs and post judgment interest."[23] Therefore, it is my opinion that the Dade County School Board is authorized to obtain insurance in excess of the limits of sovereign immunity established by s. 768.28, F.S. (1992 Supp.), in anticipation of any claims bill which it may be liable to pay but the board does not, by obtaining such coverage, waive its defense of sovereign immunity or increase its limits of liability.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgk
[1] You have phrased your inquiry in terms of a "selfinsured retention program" and explain that "there would be no insurance for that portion of the claim under the self-insured retention. Any claim the claimant, contractor or subcontractor would have for that portion of the claim under the self-insured retention would be against the School Board and not against the insurer." Thus, this plan would appear to include an indemnity program wherein the school board would agree to indemnify the contractor or subcontractor for injuries suffered while working on capital projects for the school board if the amount of such claim is below the "self-insured retention."
[2] Bannon v. Port of Palm Beach District, 246 So.2d 737, 741
(Fla. 1971). Cf., Markham v. State, Department of Revenue,298 So.2d 210 (1 D.C.A. Fla., 1974); State v. Town of North Miami,59 So.2d 779 (Fla. 1952); and Bailey v. City of Tampa, 111 So. 119
(Fla. 1926).
[3] See, Board of Commissioners v. Board of Pilot Commissioners,42 So. 697 (Fla. 1906); Brown v. Winton, 197 So. 543 (Fla 1940); AGO's 84-103, 82-23, 80-93, and 71-28.
[4] See generally, 81A C.J.S. States ss. 207, 209, 210; 56 Am.Jur.2d Municipal Corporations s. 588.
[5] And see, AGO's 85-66 (the Department of General Services is not authorized to enter into a limitation of remedies agreement whereby the contractor's liability for damages to the state for any cause and regardless of the form of action is limited); and AGO 78-20 (In the absence of any general law authorizing or directing such contracts to be made, or authorizing or consenting to a suit against the state on the same, indemnification contracts imposing liability upon the state entered into by a state agency as a county subgrantee of federal funds under the Federal Comprehensive Employment and Training Act of 1973 are nugatory and unenforceable as against the state or its agencies. State agencies are without statutory power to enter into such contracts, and the state is immune from actions thereon).
[6] See, AGO 83-72 discussing home rule powers for school boards.
[7] See generally, 30 Fla.Jur.2d Insurance s. 2.
[8] Section 112.061(2) , F.S.
[9] Section 112.061(2)(d), F.S.
[10] It is the rule that a legislative direction as to how a thing shall be done is, in effect, a prohibition against its being done in any other way. See, Alsop v. Pierce, 19 So.2d 799, 805-806
(Fla. 1944); Dobbs v. Sea Isle Hotel, 56 So.2d 341, 342 (Fla. 1952); Thayer v. State, 335 So.2d 815, 817 (Fla. 1976).
[11] See, Rule 6A-2.022(3), F.A.C., relating to day labor projects.
[12] See, s. 440.572, F.S.
[13] Section 768.28(1), F.S. (1992 Supp.).
[14] See, s. 768.28(2), F.S. (1992 Supp.), defining "state agencies or subdivisions" to include "the executive departments, the Legislature, the judicial branch (including public defenders), and the independent establishments of the state; counties and municipalities; and corporations primarily acting as instrumentalities or agencies of the state, counties, or municipalities, including the Spaceport Florida Authority."
[15] Section 768.28(5), F.S. (1992 Supp.).
[16] Section 768.28(5), F.S. (1992 Supp.).
[17] Id.
[18] Section 768.28(14)(a), F.S. (1992 Supp.).
[19] See, AGO 89-63 (concluding that "[s.] 112.656, F.S., which authorizes a retirement system to purchase insurance for its named fiduciary to cover liability or losses incurred by reason of acts or omissions of the fiduciary, does not authorize a retirement system to self insure. A "state agency or subdivision," as defined in s. 768.28, F.S., as amended, however, is authorized by that statute to selfinsure in anticipation of any claim, judgment or claims bill which they may be liable to pay pursuant to s. 768.28, F.S., as amended.").
[20] See, Avallone v. Board of County Commissioners of Citrus County, 493 So.2d 1002 (Fla. 1986), and Vega v. City of Pompano Beach, 498 So.2d 532 (4 D.C.A. Fla., 1986). And see, School Board of Orange County v. Coffey, 524 So.2d 1052, 1053 n. 1 (5 D.C.A. Fla., 1988), rev. denied, 534 So.2d 401 (Fla. 1988), which recognized that "The legislature has repealed s. 286.28, which is the basis of the supreme court's finding of waiver in [Avallone v. Board of County Commissioners of Citrus County, supra,] in favor of a new section 768.28(5) . . . ."; and AGO 89-63.
[21] 563 So.2d 755 (3 D.C.A. Fla., 1990).
[22] Id., at p. 757.
[23] Id., at p. 758.