501 So.2d 579 (1986)
Margaret E. BUTLER, Etc., Petitioner,
v.
SARASOTA COUNTY, Florida, Etc., Respondent.
No. 67869.
Supreme Court of Florida.
December 30, 1986.
Rehearing Denied February 17, 1987.
Robert Jackson McGill of the Law Office of Robert Jackson McGill, P.A., Venice, and John P. Graves, Jr., Chartered, Sarasota, for petitioner.
Robert C. Widman and Nelson Hesse Cryil Smith of Widman & Herb, Sarasota, for respondent.
Jim Smith, Atty. Gen. and Pamela Lutton-Shields, Asst. Atty. Gen., Tallahassee, for The Atty. Gen., amicus curiae.
Alan S. Zimmet, Asst. County Atty., Clearwater, for the City of Clearwater, amicus curiae.
PER CURIAM.
We review Sarasota County v. Butler, 476 So.2d 216 (Fla. 2d DCA 1985), because of direct and express conflict with Avallone v. Board of County Commissioners, 493 So.2d 1002 (Fla. 1986). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
The district court below held that respondent possessed sovereign immunity in the operation of a swimming facility.
It is uncontradicted that respondent owned the beach area in question and that it improved and maintained the area as a swimming facility. Respondent urges, and the district court below agreed, that this was a "judgmental, planning-level" decision and that respondent had no operational-level duty to operate the facility safely. This position is true in part but overlooks our holding in Avallone that
[a] government unit has the discretionary authority to operate or not operate swimming facilities and is immune from suit on that discretionary question. However, once the unit decides to operate the swimming facility, it assumes the common law duty to operate the facility safely, just as a private individual is obligated under like circumstances. We disapprove Sarasota County, Jenkins [v. City of Miami Beach, 389 So.2d 1195 (Fla.3d DCA 1980)], and Relyea [v. State, 385 So.2d 1378 (Fla. 4th DCA 1980)] to the extent they conflict with the decision here.
Id. at 1005.[*]
The duty of care is no different for a public owner than a private owner. In this instance, the public owner did not create the specific dangerous condition but did create a designated swimming area where the dangerous condition existed.
*580 We find no merit in respondent's remaining points.
We quash the opinion below and remand for reinstatement of the trial court's judgment.
It is so ordered.
ADKINS, OVERTON, EHRLICH, SHAW and BARKETT, JJ., concur.
McDONALD, C.J., dissents with an opinion, in which BOYD, J., concurs.
McDONALD, Chief Justice, dissenting.
Under the test announced in City of St. Petersburg v. Collom, 419 So.2d 1082 (Fla. 1982), a governmental entity has a duty to warn or correct dangerous conditions that the entity created, and knew to be dangerous, and which were not readily apparent to those persons who might sustain injury as a result of them. Henry Sanders' drowning resulted from strong currents and a drop-off in the body of water adjacent to South Lido Beach. Merely by owning this beach, Sarasota County did not create the hazardous conditions that led to the death of Henry Sanders. Rather, these conditions were the result of natural forces for which the county should not be held responsible.
In Collom, the city created the dangerous condition when it constructed an unprotected sewer drainage ditch. The unprotected drainage ditch itself was the dangerous condition. Likewise, in Ralph v. City of Daytona Beach, 471 So.2d 1 (Fla. 1983), the dangerous condition was the operation of a public highway by the city on a public beach. Thus, the beach itself was rendered dangerous by the city in allowing a mixed use of the beach area. Unlike the city's control of the drainage ditch in Collom and the beach/highway in Ralph, here Sarasota County did not control the strong tides and drop-offs which the jury found contributed to the drowning of Henry Sanders. Collom and Ralph reveal that "create" connotes more than merely establishing a beach near a body of water that may contain naturally occurring dangers. South Lido Beach itself was not dangerous. Rather, the adjacent body of water presented the dangers.
Governmental entities should not be liable for naturally occurring dangerous conditions in bodies of water adjacent to public beaches. The mere establishment of a beach or park should not render a governmental entity responsible for conditions naturally existing in the water. A governmental entity's responsibility is limited to those conditions of the water that result from improvements or changes it has made to the body of water. It should not be held responsible for waters which may be dangerous, depending on variable circumstances, which are not under the control of the governmental entity involved. To hold otherwise is to make the governmental entity an insurer of the public at large against naturally occurring conditions. Here, the strong currents and drop-offs, which were natural conditions, were in themselves hazardous to swimmers.
Sarasota County should not be held liable for providing access to the Gulf of Mexico without also providing lifeguards. The majority opinion holds that it is. Once again the judiciary is trespassing on the legislative prerogative of how to expend a governmental entity's funds by mandating, in effect, that lifeguards must be hired when access to natural bodies of water is provided. We should not do that.
BOYD, J., concurs.
NOTES
[*] The district court below did not have the benefit of Avallone.