557 So.2d 85 (1990)
Alice Faye ANDREWS, As Personal Representative of the Estate of Ronald Robbins, a Minor, Deceased, Appellant,
v.
DEPARTMENT OF NATURAL RESOURCES, STATE OF FLORIDA, Appellee.
No. 89-00550.
District Court of Appeal of Florida, Second District.
January 31, 1990.
Rehearing Denied February 26, 1990.
*86 Marcus Castillo of James A. Helinger, Jr., P.A., Clearwater, for appellant.
Jeffrey P. Winkler of Fowler, White, Gillen, Boggs, Villareal and Banker, P.A., St. Petersburg, for appellee.
PARKER, Judge.
In June 1984, Ronald Robbins, minor child of appellant Alice Faye Andrews, drowned in the waters of the Honeymoon Island State Recreational Area in Pinellas County. Appellant Andrews filed a wrongful death action on behalf of her deceased son against the Department of Natural Resources, State of Florida, the entity charged with the operation of the Honeymoon Island Park facility at the time of the drowning, alleging a breach of duty for failure to post signs warning of the known dangers of the currents and for failing to post lifeguards close enough to the area of the accident to warn of the dangers of swimming. The trial court entered final summary judgment for the state after finding as a matter of law that the state had not waived its sovereign immunity for purposes of this incident. Andrews appeals from that final order, and we reverse.
Prior to 1974, the City of Dunedin controlled Honeymoon Island. The state began to acquire portions of the island in 1974 and opened the Honeymoon Island State Recreational Area to the public in 1982. The brochure furnished to the public when entering the park contains the following map of the island:
*87 
The drowning occurred in the area of the park commonly referred to as Dog Beach, which is located on the southernmost portion of Honeymoon Island extending like a finger into Hurricane Pass, when appellant's son evidently was swept away by a strong current from the gulf as he was wading in the water. Charles Brannaka, the park's manager at the time of the drowning, admitted at deposition that the condition of the currents at the southernmost tip of the island were very dangerous.
The deposition testimony of Lieutenant Mills of the City of Dunedin police department established that while the island was under the control of the City of Dunedin, there were signs erected at Dog Beach warning of a strong undertow, prohibiting *88 swimming in that area, and directing the public to swim in the designated swimming area only, which was generally known as Dunedin Beach. Upon its acquisition of Honeymoon Island, the state removed this signage because, according to park officials, the signs were not necessary. According to park manager Brannaka, on the day of the drowning there were dangerous currents signs posted at various points on the island, but there were no signs which prohibited or permitted swimming in the Dog Beach area. He admitted however that Dog Beach was accessible by a dirt path leading from the parking lot without passing any of the dangerous current signs. Neither appellant nor Mary Hart, an eyewitness to the drowning, ever saw any warning signs.
Officer Rogers, a City of Dunedin police officer for thirteen years who assisted at the drowning incident, testified that on that day he observed signs at Dog Beach which read "No lifeguard on duty. Swim at own risk." He further stated that based upon his knowledge of the area he believed Dog Beach was in fact a swimming area. A lifeguard employed by the state and stationed at Dunedin Beach on the day of the drowning testified by deposition that he believed swimming at Dog Beach was not prohibited but was at one's own risk. Another state lifeguard on duty on that day stated that previously he had noticed people swimming in the Dog Beach area of the park. Park officials were aware that adults and fisherman waded in the water, and the officials rarely would ask waders to leave the water. When discussing the park rangers' duties at Dog Beach, Brannaka stated that "all these people were advised by the rangers of the safety hazards from the dogs and the currents in the past. Swimmers especially were advised."
Brannaka's deposition established that in spring 1980 the state determined that the portion of Honeymoon Island known as Dunedin Beach should become the park's only designated swimming area. The designation was not reduced to rule or regulation, and the state could not produce any document evidencing that designation. The brochure issued months prior to the accident and contained in the record on appeal, which is distributed by the state upon entry into the island, does not mention any designated swimming areas at Honeymoon Island, but states: "The clear Gulf waters are enjoyed for swimming and sun bathing." Brannaka maintained, however, that the brochure which was being distributed to the public on the date of the drowning did in fact depict on the map illustrated above Dunedin Beach as the designated swimming area.
The state, as the movant on the motion for summary judgment, had the burden of showing there was a complete absence of material facts in dispute. See Holl v. Talcott, 191 So.2d 40 (Fla. 1966). The critical question to be decided by the trial court in determining the state's waiver of its sovereign immunity in this instance was whether the state had designated the area where the drowning occurred as a swimming area. See Butler v. Sarasota County, 501 So.2d 579 (Fla. 1986) and Avallone v. Bd. of County Commissioners of Citrus County, 493 So.2d 1002 (Fla. 1986), in which the supreme court stated:
A government unit has the discretionary authority to operate or not operate swimming facilities and is immune from suit on that discretionary question. However, once the unit decides to operate the swimming facility, it assumes the common law duty to operate the facility safely, just as a private individual is obligated under like circumstances.
Avallone, 493 So.2d at 1005. In Butler, the supreme court quashed the decision of this court in that drowning case, in which we held that a county was protected by sovereign immunity in improving and maintaining a beach facility on the Gulf of Mexico based upon our finding that it was a judgmental, planning function, not an operational-level duty.[*] In so doing, the supreme court stated: "The duty of care is no different for a public owner than a private owner. In this instance, the public owner did not create the specific dangerous condition but did create a designated swimming *89 area where the dangerous condition existed." Butler, 501 So.2d at 579.
Based upon the decisions in Butler and Avallone, if the state had designated Dog Beach as a swimming area, then it was obligated to operate that facility safely and to that extent would have waived its sovereign immunity. The state through Brannaka's deposition maintains that it had only designated Dunedin Beach as a swimming area and that swimming was prohibited at Dog Beach. However, there was abundant evidence before the trial court which showed that Dog Beach also was being used by the park's visitors as a swimming area with the knowledge of the state or its employees, e.g., lifeguards. In addition, two deposed witnesses testified they observed signs at Dog Beach on the day of drowning incident indicating that swimming was permitted in that area but at the individual's own risk. The state had also removed signs indicating the designated swimming area as well as that designation on the brochure's map illustration; instead, the brochure merely indicated that swimming was an accepted activity in the park. We conclude these actions by the state created a genuine issue of material fact regarding whether Dog Beach was a swimming area being operated by the state that precluded the entry of summary judgment.
The state's reliance on Warren v. Palm Beach County, 528 So.2d 413 (Fla. 4th DCA), cause dismissed, 537 So.2d 570 (Fla. 1988) is misplaced, because in Warren the lake in which a diving injury occurred, although owned by the county, had never been designated as a swimming area. However, in this case, there is at least an issue of material fact in dispute concerning whether the state led the public to believe that Dog Beach was a designated swimming area. Where the record reflects the possibility or slightest doubt that an issue exists, summary judgment is improper. Gomes v. Stevens, 548 So.2d 1163, 1164 (Fla. 2d DCA 1989). We, therefore, reverse the summary judgment entered in favor of the Department of Natural Resources and remand this case for further proceedings.
Reversed and remanded.
DANAHY, A.C.J., and SCHOONOVER, J., concur.
NOTES
[*] See Sarasota County v. Butler, 476 So.2d 216 (Fla. 2d DCA 1985).