568 So.2d 949 (1990)
Judy PELZ, As Personal Representative of the Estate of Ross F. Pelz, Deceased, Appellant,
v.
CITY OF CLEARWATER, Florida, a Municipal Corporation, Appellee.
No. 89-00680.
District Court of Appeal of Florida, Second District.
September 21, 1990.
Rehearing Denied October 29, 1990.
S. Grant Halliday, Tampa, for appellant.
Alan S. Zimmet of Sargent, Repka, Covert, Steen & Zimmet, P.A., Clearwater, for appellee.
PARKER, Judge.
Upon studied consideration of the motions for rehearing and rehearing en banc filed by the appellee, the City of Clearwater (the City), we grant the motion for rehearing and issue this revised opinion which markedly alters our previous opinion in this matter, which we hereby withdraw.[1]
This appeal was taken by Judy Pelz, the spouse of deceased victim of a drowning at Sand Key beach in the City of Clearwater, Florida, after the trial court entered final summary judgment for the City based upon a finding that the City was immune from liability under the doctrine of sovereign immunity. Although we still adhere to the view expressed in our earlier opinion that a question of fact existed with respect to the issue of whether the City had designated the area as a swimming facility and thus waived sovereign immunity regarding the operation of that facility, we now hold that that factual dispute is not material to the case so as to prevent the entry of summary judgment for the City. We affirm the summary *950 judgment on legal grounds other than sovereign immunity.
The drowning occurred in a sandy area, a waterfront strip of land lying south of the Clearwater Pass Bridge at the junction of the waters of Clearwater Bay and the opening to the Gulf of Mexico, which forms Clearwater Pass and is commonly referred to as "Sand Key." The decedent, Ross F. Pelz, had been coming to that specific beach area for several years. According to Judy Pelz, his wife, they went to Sand Key on that particular day intending to swim, bathe, and picnic at the beach.
Shortly after arriving at the Sand Key beach Mr. Pelz took a group of children into the water, while his wife remained on the land. Mr. Pelz was attempting to teach the younger children how to float and to swim. Several people, including the decedent, were in the water approximately 100 to 150 feet from the shoreline. Cecil Raby, a nine-year-old child who could not swim took a step and plunged into deep water over his head. When he could not touch the bottom, he began to panic. He floundered in the water and yelled for assistance. Mr. Pelz swam to his aid. The decedent reached the site and was able to pull the child's head out of the water and hold the child above water. Other adults from the shore hurriedly entered the water with an innertube and swam to the two. The adults were able to grab the child and bring him to shallow ground. One or more of the other adults attempted to place Mr. Pelz on the innertube as it appeared he was not able to support himself in the water. The decedent eventually was brought to shore on the innertube where emergency medical service personnel rendered emergency aid. He was taken to the hospital, where he was pronounced dead as the result of drowning.
In her amended complaint against the City for the wrongful death of her husband, Judy Pelz alleged that the City knew or should have known of dangerous underwater conditions at Sand Key, and in particular the existence of sudden steep drop-offs adjacent to the Sand Key area, as the City maintained underwater topographical charts of the area. It was further alleged that the City failed to warn of the existence of these sudden steep drop-offs, which resulted in the drowning death of Mr. Pelz.
In its motion for summary judgment, the City, among other points (including the sovereign immunity issue), contended that there was no evidence which established that the City created sharp and sudden increases in the depth of the water where the accident occurred, and that the City had any knowledge, either constructive or actual, of the alleged underwater dangerous conditions. The City further stated that under the circumstances of this case a private person would not be liable for the operation of the Sand Key area. The City in support of its motion produced affidavits from two licensed land surveyors and the City's Harbormaster which together reflect that in the area where this drowning occurred, there are no steep drop-offs, that no dredging has occurred in that area which could have created steep drop-offs, and that based upon topographical charts made of the area, the slope of the bottom under the water has not changed significantly from 1979 through August 12, 1986. This drowning occurred on July 20, 1984.
None of the depositions or affidavits produced by Pelz in opposition to the City's motion for summary judgment discloses how the City knew or should have known of the existence of any steep drop-offs or other dangerous condition in the area of the drowning. Regarding any severe drop in the water's depth, the affidavits at most revealed that Cecil Raby experienced a steep drop on the day of the drowning and that Mrs. Pelz did not observe any warning of such a drop-off. The affidavits, instead, focused on creating a factual issue of whether the City had designated the area for swimming. The trial court ultimately granted summary judgment for the City on the sovereign immunity ground, finding, as a matter of law, that the Sand Key area was not a designated swimming facility. Even if the trial court erred in ruling on this question as a matter of law, we may affirm the summary judgment if it was proper under any applicable *951 theory of law. See Swanson v. Gulf West Int'l Corp., 429 So.2d 817 (Fla. 2d DCA 1983).
Here, even if this area could be considered a designated swimming facility, there must be some modicum of evidence that the City knew of the dangerous condition before it can be liable. The City as the property owner has the duty toward a public invitee like Mr. Pelz to protect the invitee from dangers of which it is or should be aware and to warn the invitee of concealed dangers which are or should be known to the owner and which are unknown to the invitee and cannot be discovered by him through the exercise of due care. See Levy v. Home Depot, Inc., 518 So.2d 941 (Fla. 3d DCA 1987). There was simply no evidence produced by this plaintiff at the summary judgment hearing that the City created any hidden danger or knew or should have known of any steep drop-off in the water where the drowning occurred. To the contrary, the City's evidence reflects it had conducted a survey of the area in 1979, long before the drowning, which did not uncover any steep drop. Absent any finding by the City of such a dangerous condition, the City did not violate any duty to warn or protect Mr. Pelz.
In DeMesme v. Stephenson, 498 So.2d 673 (Fla. 1st DCA 1986), the court explained the burdens of the parties in a motion for summary judgment:
The initial burden, in summary judgment proceedings, is upon the movant. When he tenders evidence sufficient to support his motion, then the opposing party must come forward with counter-evidence sufficient to reveal a genuine issue. The movant, however, does not initially carry the burden of exhausting the evidence pro and con, or even examining all of his opponent's witnesses. To fulfill his burden, the movant must offer sufficient admissible evidence to support his claim of the nonexistence of a genuine issue. If he fails to do this his motion is lost. If he succeeds, then the opposing party must demonstrate the existence of such an issue either by countervailing facts or justifiable inferences from the facts presented. If he fails in this, he must suffer a summary judgment against him. See, Harvey Building, Inc. v. Haley, 175 So.2d 780 (Fla. 1965).
DeMesme, 498 So.2d at 675. In this instance the City, as the movant, presented evidence by virtue of the affidavits of the land surveyors of the area and topographical charts of the area made before and after the drowning. That evidence established that the City by its 1979 survey sought to ascertain the condition of the area in question and did not uncover any hidden danger such as a steep drop-off that would have created a duty by the City to warn. The appellant, on the other hand, failed to produce any countervailing evidence of knowledge of such a danger by the City. Therefore, as a matter of law, the City in this case cannot be held liable as a private owner for unknown dangerous conditions in a body of water under its control after its surveys of the area revealed no such conditions. We conclude, therefore, that the City properly prevailed in its motion for summary judgment and affirm the trial court, but for reasons not related to sovereign immunity. See Swanson.
This case is distinguishable from the case of Andrews v. Dep't of Natural Resources, 557 So.2d 85 (Fla. 2d DCA 1990). In that case, also involving a drowning at a government-operated beach, the state was on notice that individuals were swimming in a beach area of the state park, and that the area was known by park officials for dangerous currents. Therefore, there were material questions of fact as to whether the state had established a designated swimming area where there were known dangerous currents and whether the state had adequately warned park visitors of this danger. Because of these questions of fact, the entry of summary judgment in that case was precluded.
Affirmed.
SCHEB, A.C.J., and CAMPBELL, J., concur.
NOTES
[1] See Pelz v. City of Clearwater, 563 So.2d 761 (Fla. 2d DCA 1990).