SHEFFIELD, FRANK E., Associate Judge.
Appellant Shari Judkins seeks review of an order granting summary judgment to Appellee, Walton County, on Judkins’ inverse condemnation claim based on Jud-kins’ failure to comply with the four year statute of limitations contained in section 95.11(3)(p), Florida Statutes. Judkins argues that the stabilization doctrine set forth in United States v. Dickinson held the statute of limitations on her claim in abeyance until Walton County abandoned its efforts to remediate the flooding of Judkins’ property; she also argues that the trial court abused its discretion in failing to grant her leave to amend her complaint. We affirm the denial of leave to amend without comment, but write to explain why we affirm the trial court’s ruling that the stabilization doctrine does not apply to this case.
Judkins acquired unimproved residential property in Destín in 2001, and became the sole owner of the parcel in 2006. -In 2002 and 2003, Walton County performed road improvement activity on Holiday Road, which fronts the property. That activity involved alteration to the existing drainage pattern. After the work was complete in 2002, Appellee noticed that the property flooded nearly every time it rained, such that it was impossible to improve the property. While there is some evidence that later projects may have contributed some flood water to the property, Judkins has consistently asserted that the property has *64 been unusable since the original road project was completed in 2002.
After Judkins complained to the county, she asserts she received numerous assurances that the flooding problem would be repaired. According to Judkins, the county represented that contemplated road work in nearby neighborhoods would alleviate flooding on her property. Walton County undertook several projects, but the problem was never successfully resolved; there is no evidence that these projects were undertaken for the purpose of remedying flooding on the Judkins property. In fact, a 2004 letter from the county engineer to Judkins advised that the flooding was not caused by the 2002 road improvements and that Walton County assumed no responsibility for repairing it. One such project concluded in 2007 but did not ameliorate the flooding.
In 2009, Judkins filed a Complaint for Inverse Condemnation based on the flooding of the parcel, alleging that the drainage system associated with the road improvement project caused water to continuously and permanently stand on the property, rendering it unusable. Walton County raised several affirmative defenses, including that the claim was barred by the statute of limitations, which the county asserted began to run in 2002 when the water first continuously invaded the property. On this basis, the trial court granted summary judgment to Walton County.
Judkins contends that the logic of United States v. Dickinson compels reversal in this case. 331 U.S. 745, 67 S.Ct. 1382, 91 L.Ed. 1789 (1947). The general rule of law is that a property owner must bring an inverse condemnation claim within four years of the physical invasion of the property caused by governmental action. Sarasota Welfare Home, Inc. v. City of Sarasota, 666 So.2d 171, 172-73 (Fla. 2d DCA 1995). In Dickinson, the United States Supreme Court provided for a limited exception under federal law to this rule in cases where a property owner would not be able to ascertain the full extent of the invasion or injury to their property at the time of the initial intrusion. The court held that a cause of action for a governmental taking of private property, by gradually increasing the depth of a river such that it permanently flooded the property, accrues not when the first act of taking occurs but when the extent of the taking “becomes stabilized.” Id. at 749, 67 S.Ct. 1382. The Supreme Court determined that a landowner need not bring suit “until the consequence of inundation have so manifested themselves that a final account may be struck.” Id. In the instant case, and unlike in Dickinson, there is a distinct event where the extent of flooding became known when the project was completed.
This Court applied Dickinson’s rationale to inverse condemnation claims in Millender v. State Department of Transportation, 774 So.2d 767, 770 (Fla. 1st DCA 2000). In Millender, like in Dickinson, the governmental taking of the property was accomplished by a gradual process; further, in Millender, the final act completing the taking was a state agency’s mandate that the landowner remove a seawall which had been mitigating the flooding. Id. at 771. This specific governmental act, related to the initial invasion, accomplished the flooding within four years of the date the plaintiff filed suit. While there is some evidence that an independent project in this case may have added to the level of flooding, there is no indication that this new governmental action accomplished a taking itself — according to Judkins’ allegations, the property was already unusable due to flooding before the additional flooding occurred. In fact, the deposition testimony of Judkins *65 and her expert indicated the cause of action accrued in 2002, when the first project was completed. Thus, Millender is inapplicable.
Only one other Florida court has applied the Dickinson stabilization doctrine. In Hillsborough County Aviation Authority v. Benitez, 200 So.2d 194 (Fla. 2d DCA 1967), the Second District held that the statute of limitations on an inverse condemnation claim based on increased air traffic noise in proximity to an airport did not accrue until the noise level, which had been gradually increasing for eight years, became stabilized with the nearly constant arrival of jet aircraft. It was only at this time, when the extent of the invasion was known, that the cause of action accrued.
Judkins relies on Applegate v. United States, 25 F.3d 1579 (Fed.Cir.1994), in which the court determined that continued governmental promises to remediate erosion damage caused by the construction of a channel through a barrier island, abated the statute of limitations such that it did not begin to run while the promises rendered the landowners uncertain as to the permanency of the erosion. Id. at 1582. The Federal Circuit, in applying Dickinson, relied on “both the very gradual nature of this particular continuous physical process and the [government’s] promises to restore the littoral flow of sand” to decide the taking had not stabilized prior to the limitations period. Id. at 1583 (emphasis added). This is another decision in which the extent of the injury was not known at the time of the initial invasion, and thus the action had not accrued. The instant case is a different situation.
No court has applied the stabilization doctrine in a situation where the extent of the injury is known and the cause of action has accrued. Judkins suggests that we apply the doctrine based solely on a subsequent promise to build a distinct project which may have some remedial effect on the initial intrusion, for which a cause of action has accrued. We decline to do so.
Turning to the instant case, application of this rule is simple. When the flooding allegedly caused by Walton County’s improvements to Holiday Road invaded Jud-kins’ property in 2002, the property was no longer improvable and thus had been taken, regardless of whether the county promised to repair the problem. The statute of limitations began to run at that time, and had elapsed well before suit was filed in 2009.
This is not to say that Walton County’s actions in promising to remedy the flooding and then, after the limitations period expired, abandoning the remediation effort insulated it from liability. Indeed, Judkins may very well have been able to avoid the statute of limitations by pleading and proving equitable estoppel. Avoidance of affirmative defenses, however, must be specifically pled in a Reply. Fla. R. Civ. P. 1.110(d). At no point in this proceeding did Judkins raise collateral estoppel, and therefore the issue was waived.
Because the Dickinson stabilization doctrine does not apply in this case, the summary judgment entered below is AFFIRMED.
WOLF, J., concurs. OSTERHAUS, J., concurs with opinion.