NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

DAVID BAIR and AILEEN BAIR,   )
   )
      Appellants,   )
   )
v.   )   Case No. 2D15-1210
   )
CITY OF CLEARWATER, FLORIDA,   )
   )
      Appellee.   )
   )

Opinion filed August 5, 2016.

Appeal from the Circuit Court for
Pinellas County; Jack Day, Judge.

Jeffrey W. Gibson and Ashley R. Kellgren
of Macfarlane Ferguson & McMullen,
Tampa; and Joshua Magidson and Nancy
S. Paikoff of Macfarlane Ferguson &
McMullen, Clearwater, for Appellants.

Jeffrey L. Hinds and Jay J. Bartlett of
Smolker, Bartlett, Loeb, Hinds & Sheppard,
P.A., Tampa; and Paul Richard Hull,
Assistant City Attorney, Clearwater, for
Appellee.


MORRIS, Judge.

David and Aileen Bair appeal a final judgment entered against them in

their complaint against the City of Clearwater for claims of equitable estoppel and for

relief pursuant to the Bert J. Harris, Jr., Private Property Rights Protection Act (Bert

Harris Act).[1]  The underlying action arose after the City issued a stop-work order relating to modifications and improvements that the Bairs were making to their home pursuant to a permit that the City had previously issued.  The stop-work order was based on the City's determination that the cost of the modifications and improvements exceeded 50 percent market value of the Bairs' home and, therefore, that the Bairs were required to bring the home into compliance with current flood prevention requirements before construction could resume.  Because we agree with the trial court that the equitable estoppel claim was not a cognizable stand-alone cause of action and that the City's application of its ordinances in this case did not give rise to a cognizable Bert Harris Act claim, we affirm.

BACKGROUND

The Bairs purchased their waterfront home on Clearwater Beach in 2008.  A 2003 Flood Insurance Rate Map indicates that the property sits below the 100-year elevation in a "V" flood zone.

In 2011, the Bairs submitted an application for a permit to remodel the home as well as to add an addition onto the home.  Because the property was located in a flood zone, the Bairs were required to comply with section 51.03 of the City of Clearwater's Development Code (the City Code) and relevant Federal Emergency Management Agency (FEMA) regulations regarding flood damage resistance requirements for any substantial improvements made to the home.  This meant that if substantial improvements were made, the structure was required to be elevated so that the bottom of the lowest horizontal part of the structure would be at or above the base

_____

[1]§ 70.001, Fla. Stat. (2011).

flood elevation level. "Substantial improvements" as defined by the City Code and FEMA regulations are modifications or improvements to a structure made during a one-year period that equal or exceed 50 percent of the market value of the structure before the modifications or improvements commenced. Structures are not required to be elevated at or above the base flood elevation level if the modifications or improvements are nonsubstantial.[2]

The City reviewed the Bairs' permit application and requested that the Bairs submit an application for nonsubstantial improvements. As part of the application, the Bairs were required to obtain an appraisal to determine the market value of their home prior to any improvements being made. The purpose of the appraisal was to provide a benchmark to determine whether the Bairs' proposed improvements could be classified as nonsubstantial, thereby excusing them from the requirement to elevate their home. The Bairs complied with the City's request in June 2011. The Bairs' application included an affidavit from an engineer attesting to the scope and cost of the work to be performed, a 2010 appraisal report, and a budget for the proposed improvements and addition to their home. The Bairs represented in their application that the cost of the proposed improvements and addition would not exceed 50 percent of the market value of the structure that existed before the commencement of construction. Based on the application, the City issued the permit.

In August 2011, the Bairs began construction on their home, which included a partial demolition. However, nine days after construction commenced, the

_____

[2]In coastal developments, this requirement relating to substantial and nonsubstantial improvements is known as the "50 percent Rule."

-3-

City issued a stop-work order pursuant to chapter 51 and section 47.001 of the City Code on the basis that the partial demolition was so extensive that the City believed the improvements and addition would exceed 50 percent of the market value of the pre-existing structure.

Thereafter, the Bairs engaged in conversations with the City in an effort to have the stop-work order lifted. Eventually, the Bairs submitted revised plans showing that while the cost of the project had increased, the size and scope of the project had been scaled back. The Bairs also submitted a revised appraisal which relied on a cost valuation approach; that approach was different from the market value approach used in the initial appraisal report. The new valuation methodology allowed for an increase in the Bairs' construction budget while still allowing them to comply with the 50 percent Rule.

However, even with the revised plans and second appraisal, the City was not convinced that the improvements and addition could be completed within the scope of the nonsubstantial improvements permit. Thus, the City refused to lift the stop-work order. The Bairs appealed to the City's Building/Flood Board of Adjustment and Appeals which ultimately affirmed the City's decision to leave the stop-work order in effect.

In March 2013, the Bairs filed a two-count complaint against the City. Count I sought relief pursuant to the Bert Harris Act, and count II sought damages based on an equitable estoppel theory. In response, the City filed a motion to dismiss and an alternative motion for summary judgment as to the equitable estoppel claim, arguing that there was no freestanding claim for equitable estoppel but even if there

was, the Bairs are precluded from seeking monetary relief. The City also sought

summary judgment on the Bert Harris Act claim, arguing that because the stop-work

order was predicated on the application of ordinances that were enacted on or before

May 11, 1995, the Bert Harris Act did not apply. The trial court ultimately granted the

motion to dismiss the equitable estoppel claim as well as the motion for summary

judgment on the Bert Harris Act claim. Final judgment was entered in favor of the City,

and this appeal now follows.

ANALYSIS

I.      The Bert Harris Act claim

We review the trial court's order granting final summary judgment de novo.

See Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla.

2000). Issues involving statutory interpretation are also reviewed de novo. Borden v.

East-European Ins. Co., 921 So. 2d 587, 591 (Fla. 2006). Summary judgment is

properly entered only if there is no genuine issue of material fact and the moving party

is entitled to judgment as a matter of law. Aberdeen at Ormond Beach, L.P., 760 So. 2d

at 130.

In interpreting a statute, we must primarily look to the plain language of

the statute at issue. J.W. v. Dep't of Children & Family Servs., 816 So. 2d 1261, 1263

(Fla. 2d DCA 2002). If the statute is clear and unambiguous, we need not resort to

rules of statutory interpretation; rather, we give the statute "its plain and obvious

meaning." Holly v. Auld, 450 So. 2d 217, 219 (Fla. 1984) (quoting A.R. Douglass, Inc.

v. McRainey, 137 So. 157, 159 (Fla. 1931)). The Bert Harris Act contains a very narrow

waiver of sovereign immunity, see § 70.001(13), and such waiver statutes are strictly construed, see Spangler v. Fla. State Turnpike Auth., 106 So. 2d 421, 424 (Fla. 1958).

Section 70.001(13) provides in relevant part that "the state, for itself and for its agencies or political subdivisions, waives sovereign immunity for causes of action based upon the application of any law, regulation, or ordinance subject to this section, but only to the extent specified in this section." Section 70.001(12) clarifies that there is no cause of action against a governmental entity under the Bert Harris Act "as to the application of any law enacted on or before May 11, 1995, or as to the application of any rule, regulation, or ordinance adopted, or formally noticed for adoption, on or before that date." Thus there is no waiver of sovereign immunity for actions that fall within the scope of section 70.001(12). However, there is an exception where a law, rule, regulation, or ordinance has been amended after May 11, 1995, and the application of the amended language "imposes an inordinate burden apart from the law, rule, regulation, or ordinance being amended." § 70.001(12). The ordinances at issue here—City Code section 47.001 and the applicable portions of chapter 51—were adopted on or before May 11, 1995, and neither section 47.001 nor the relevant portions of chapter 51 have been revised after that date.

Yet the Bairs argue that their Bert Harris Act claim against the City was substantially broader than the mere application of an ordinance. Specifically, they contend that the Bert Harris Act claim was based on other actions by the City that inordinately burdened their property such as the City making ongoing requests for additional information and requests for revisions to plans and the City changing its position on issues. The Bairs also assert that certain provisions in chapter 51 require

the City to rely on post-1995 information such as flood insurance rate maps and studies, and they argue that because the City relied on FEMA regulations in determining that the construction exceeded the 50 percent Rule, the City's conduct was not limited to simply applying the pre-1995 City Code. Finally, the Bairs maintain that the purpose and intent of section 70.001(12) is to preclude claims based on pre-1995 application of laws, rules, regulations, or ordinance, but they argue that it was never intended to bar claims based on governmental actions taken on a permit that was issued well after May 11, 1995. Based on these arguments, the Bairs contend that there was a genuine issue of material fact as to whether section 70.001(12) applied.

The Bairs' first argument—that the City's other actions beyond the mere application of the City Code inordinately burdened the Bairs' property—is based on the Bairs' interpretation of section 70.001(2) which provides for a cause of action "[w]hen a specific action of a governmental entity has inordinately burdened an existing use of real property or a vested right to a specific use of real property." The Bairs assert that because section 70.001(2) does not limit causes of action to instances where a city has applied a law, rule, regulation, or ordinance, their Bert Harris Act claim is not barred in its entirety by section 70.001(12). However, the limited waiver of sovereign immunity found in section 70.001(13) applies only where a governmental entity has *applied* a law, rule, regulation, or ordinance as specified. And in the statement of legislative intent found in section 70.001(1), the legislature recognized that it was the *application* of laws, regulations, and ordinances that sometimes inordinately burden real property, not ongoing requests for information, requests for revisions to plans, or a governmental entity's change in position. Other subsections in section 70.001 likewise refer to the

-7-

*application* of a law or regulation.  See § 70.001(3)(e)(2), (4)(d), (11).  In determining legislative intent based on the plain language of a statute, we read the statute as a whole.  Fla. Dep't of Envtl. Prot. v. ContractPoint Fla. Parks, LLC, 986 So. 2d 1260, 1265 (Fla. 2008).  Based on our reading of section 70.001 in its entirety, valid Bert Harris Act claims are predicated on the application of laws, rules, regulations, or ordinances.  Consequently, the Bairs' attempt to broaden their claim to evade the protection afforded to the City under section 70.001(12) fails.  No genuine issue of material fact was created by this assertion.

The Bairs' second argument—that the City relied on portions of chapter 51 that were amended after May 11, 1995, as well as FEMA regulations—likewise fails. The City never argued that it had authority to administer or apply FEMA regulations, and therefore, there was no genuine issue of material fact as to whether it applied something beyond a law, rule, regulation, or ordinance of this state or a political entity of this state.  See § 70.001(1) (explaining that the Bert Harris Act was intended to provide a cause of action where the application of a law, rule, regulation, or ordinance of the state or political entity of the state affects real property).  Further, even if the City had been delegated such authority by FEMA, the application of FEMA regulations would not provide a cognizable cause of action under the Bert Harris Act.  See § 70.001(3)(c) (explaining that the term "governmental entity," as used when referring to actions that inordinately burden real property, does not include a municipality that "independently exercises governmental authority . . . when exercising the powers of the United States or any of its agencies through a formal delegation of federal authority").

Similarly, the fact that the City relied on post-1995 flood insurance maps and studies (as required by portions of chapter 51) in determining that the Bairs' property was within a flood zone, thus requiring the Bairs to comply with the 50 percent Rule, does not create a genuine issue of material fact as to whether a cause of action under the Bert Harris Act existed. This is because any reliance on post-1995 amended portions of chapter 51 did not inordinately burden the Bairs' property "apart from the law, rule, regulation, or ordinance being amended." § 70.001(12). Rather, the reliance on those amended portions of chapter 51 was part of the City's overall decision to require compliance with the 50 percent Rule, a rule that was enacted prior to May 11, 1995. Because the City established that there was no genuine issue of material fact regarding whether section 70.001(12) applied, the burden shifted to the Bairs to prove that there was a genuine issue of material fact regarding whether the application of any newly amended sections of chapter 51 imposed an inordinate burden on their real property. See Landers v. Milton, 370 So. 2d 368, 370 (Fla. 1979) (explaining that once a movant for summary judgment has met its burden of proving that no genuine issue of material fact exists, the burden shifts to the nonmovant to prove that such an issue does exist); Pelz v. City of Clearwater, 568 So. 2d 949, 951 (Fla. 2d DCA 1990) (citing DeMesme v. Stephenson, 498 So. 2d 673, 675 (Fla. 1st DCA 1986), for the same proposition); see also Town of Ponce Inlet v. Pacetta, LLC, 120 So. 3d 27, 29 (Fla. 5th DCA 2013) (noting that plaintiff who brought Bert Harris Act claim had burden of proving that town's actions constituted inordinate burden on plaintiff's vested right to use its property). But as we explained, the Bairs failed to meet their burden.

The Bairs' third and final argument regarding the Bert Harris Act claim—that section 70.001(12) was only intended to bar claims of application of an ordinance that occurred prior to May 11, 1995—is meritless. The plain language of section 70.001(12) provides that "[n]o cause of action exists . . . as to the application of any law enacted on or before May 11, 1995, or as to the application of any rule, regulation, or ordinance adopted, or formally noticed for adoption, on or before that date." The reference to the *enactment* of an ordinance or the *adoption or formal notice for adoption* of an ordinance on or before May 11, 1995, makes it clear that the legislature intended to bar claims based on the application of grandfathered legislation, i.e., any law, rule, regulation, or ordinance that was in effect or formally noticed to be in effect on or before the specified date. If the legislature intended merely to preclude claims based on a governmental entity's application of an ordinance that occurred prior to May 11, 1995, it could have specified that no cause of action existed for any application of a law, rule, regulation, or ordinance that occurred prior to that date. But by its terms, section 70.001(12) precludes claims for the application of an ordinance that was in effect prior to May 11, 1995, without regard to when the application of the ordinance occurred.

The Bairs contend that such an interpretation essentially eviscerates the purpose of the Bert Harris Act. We do not agree. Section 70.001(12) still allows for a cause of action to be brought where a pre-May 11, 1995, ordinance has been amended if the amended language "imposes an inordinate burden apart from the . . . ordinance being amended." This exception makes it clear that the legislature intended to preclude claims based on grandfathered legislation but to allow claims based on newly imposed

-10-

requirements that inordinately burden real property.  The purpose of the Bert Harris Act is thus still being served.

The City met its burden of proving that there was no disputed issue of material fact that section 70.001(12) applied to bar the Bert Harris Act claim, while the Bairs failed to prove that such an issue existed.  Accordingly, summary judgment was properly granted on the Bert Harris Act claim.

II.     Equitable Estoppel Claim

We review the trial court's order dismissing the equitable estoppel claim with prejudice under a de novo standard.  Belcher Ctr., LLC v. Belcher Ctr., Inc., 883 So. 2d 338, 339 (Fla. 2d DCA 2004).  When reviewing a motion to dismiss for failure to state a cause of action, the trial court is limited to the four corners of the complaint, and if the court is required to consider matters outside the four corners of the complaint, then the claim may not be dismissed on the basis of an affirmative defense.  See id.

The trial court correctly dismissed the Bairs' claim for damages under a theory of equitable estoppel.  Florida courts recognize that equitable estoppel may be invoked against a governmental entity as a supporting theory for some other remedy. See Pacetta, LLC, 120 So. 3d at 29-30 (recognizing that equitable estoppel may be invoked to support a Bert Harris Act claim if a property owner relies in good faith upon the governmental action in question); cf. State, Agency for Health Care Admin. v. MIED, Inc., 869 So. 2d 13, 21 (Fla. 1st DCA 2004) (rejecting plaintiff's equitable estoppel claim where it was brought as a stand-alone cause of action "rather than as a supporting theory for some other equitable remedy").  However, this court and others hold that "equitable estoppel is a defensive doctrine rather than a cause of action."  Angelo's

Aggregate Materials, Ltd. v. Pasco County, 118 So. 3d 971, 973 n.3 (Fla. 2d DCA 2013) (quoting Meyer v. Meyer, 25 So. 3d 39, 43 (Fla. 2d DCA 2009)); MIED, Inc., 869 So. 2d at 20; see also Watson Clinic, LLP v. Verzosa, 816 So. 2d 832, 834 (Fla. 2d DCA 2002) (explaining that appellee raised equitable estoppel as an affirmative defense).  This principle is logical because equitable estoppel is designed to prevent a loss rather than to aid a party from gaining something.  See Meyer, 25 So. 3d at 43; MIED, Inc., 869 So. 2d at 20; see also Major League Baseball v. Morsani, 790 So. 2d 1071, 1077 (Fla. 2001) (explaining that by definition and usage, equitable estoppel " 'estops' or bars a party from asserting something (e.g., a fact, a rule of law, or a defense) that he or she otherwise would be entitled to assert").

We recognize that other courts appear to allow equitable estoppel to be invoked offensively in order to avoid an opposing party's defense.  See Judkins v. Walton County, 128 So. 3d 62, 65 (Fla. 1st DCA 2013) (noting that appellant may have been able to avoid statute of limitations defense by pleading and proving equitable estoppel); Castro v. Miami-Dade Cty. Code Enf't, 967 So. 2d 230, 233 (Fla. 3d DCA 2007) (quashing circuit court order where circuit court failed to apply equitable estoppel offensively to estop county from enforcing set-back requirements ordinance); Bruce v. City of Deerfield Beach, 423 So. 2d 404, 406 (Fla. 4th DCA 1982) (concluding that equitable estoppel might be available to avoid defense of failure to exhaust administrative remedies).  But that is not how the Bairs attempted to apply the doctrine in this case.  Rather, they brought a stand-alone claim of equitable estoppel seeking monetary damages.  The Bairs stipulated to this fact in the trial court.  As a result, they

-12-

are bound to their stipulation.  Gunn Plumbing, Inc. v. Dania Bank, 252 So. 2d 1, 4 (Fla. 1971); Lotspeich Co. v. Neogard Corp., 416 So. 2d 1163, 1165 (Fla. 3d DCA 1982).

The Bairs now seek to avoid their stipulation by labeling it as a fact outside the record that the trial court was not permitted to consider on the City's motion to dismiss.  But this argument was not made below, and therefore, the Bairs are procedurally barred from raising this argument for the first time on appeal.  Dade Cty. Sch. Bd. v. Radio Station WQBA, 731 So. 2d 638, 644 (Fla. 1999).  The Bairs argue that the procedural bar should not apply because they were not aware that the trial court was considering matters outside the record until they received the trial court's order. However, even while acknowledging the stipulation in the trial court, the Bairs had the opportunity to make the same argument to the trial court that they make on appeal: the stipulation was not a proper consideration in determining whether a stand-alone claim existed because it was a fact outside the record.  And even if they could not have anticipated that the trial court would rely on the stipulation in dismissing the claim, the Bairs could have made the argument in a motion for rehearing of the final judgment. Yet no such motion was filed.  Consequently, there is no reason to excuse the Bairs from preserving this issue with the trial court before raising this issue on appeal.

Because there is no basis in the law for a stand-alone claim of equitable estoppel seeking monetary damages and because the Bairs stipulated that that is the only relief they were seeking in count II of their complaint, the trial court correctly determined that the claim failed to state a cause of action.

CONCLUSION

We hold that the City established that there was no genuine issue of material fact that section 70.001(12) applied to bar the Bairs' Bert Harris Act claim and, therefore, that the trial court properly granted summary judgment on that claim. We likewise hold that the trial court properly dismissed the equitable estoppel claim for failure to state a cause of action. Accordingly, the judgment of the trial court is affirmed.

Affirmed.


VILLANTI, C.J., and WALLACE, J., Concur.